## THOMSON v. LEE COUNTY.

The general doctrines of this court, as settled by various recent decisions, on the subject of railroad bonds issued by municipal corporations to "bearer," and which have passed into the hands of *bonâ fide* holders for value,—affirmed and acted on ; in the following points decided:

1. A county, or other municipal corporation, has no inherent right of legislation, and cannot subscribe for stock in a public improvement, unless authorized to do so by the legislature. But the legislature of a State, unless restrained by the organic law, has the right to authorize a municipal corporation to take stock in a railroad or other work of internal improvement, to borrow money to pay for it, and to levy a tax to repay the loan. And this authority can be conferred in such a manner that the objects can be attained either with or without the sanction of the popular vote.

2. If the courts of a State have when an agreement is made construed their constitution and laws so as to give the agreement force and vitality, the same courts cannot, by a subsequent and contrary construction, render it invalid.

3. If the legislature possess the power to authorize an act to be done, it can by a retrospective act cure the evils which existed, because the power thus conferred has been *irregularly* executed.

4. Bonds with coupons, payable to bearer, are negotiable securities, and pass by delivery ; and, in fact, have all the qualities and incidents of commercial paper.

5. If coupons to bonds are drawn so that they can be separated from the bonds, and like the bonds, are negotiable ; the owner of them can sue on the coupons without producing the bonds to which they were attached, or without being interested in them.

THE constitution of Iowa, made in 1846, and which invested the General Assembly with all the legislative power of the State, ordained thus :

" The General Assembly shall not in *any manner* create any debt or debts, liability or liabilities, which shall singly or in the aggregate, with any previous debts or liabilities, exceed the sum of *one hundred thousand dollars*, except in the case of war, &c., unless the same shall be authorized by some law for some single object or work to be distinctly specified therein, &c. No such law shall take effect until at a general election it shall have been submitted to the people and have a majority of all the votes cast for and against it at such election."

With this constitution in force and after certain statutes had been passed by the General Assembly relative to the corporate powers of counties, their right to execute bonds for railroads, &c., it was decided, or so said to be, at an election held in Lee County, Iowa, in 1856, to take stock and issue bonds to three different railroads; one hundred and *fifty* thousand dollars to *each.*

The validity of the subscription was contested in the proper court, soon afterwards, as having been the exercise of a power not given to the county, or as so irregular an exercise of it, if given, as to be void. The court, in December, 1856, decided that the election was irregular, and conferred no power to issue the bonds. The legislature of the State, on the 29th of July, 1857, accordingly passed an act entitled "An act *legalizing* the issue of county, city, and town corporation bonds in the counties of *Lee* and Davis." This act declared "that all votes heretofore taken in the counties of Lee and Davis in the form of a joint or several proposition whether said counties will aid in the construction of one or more railroads, specifying the amount to be given to each . . . and the bonds of said counties issued in pursuance of said votes and subscriptions shall be a valid lien upon the taxable property of said county." After this the county judge, the proper officer, if the act was valid, proceeded to take the stock and issue bonds. The bonds were in the ordinary form of what are called coupon bonds; payable to "bearer." The coupons attached were in a like negotiable shape; "promises to pay to the bearer at the Continental Bank, in the city of New York, forty dollars interest on bond No. 1."

Soon after the bonds were issued the county laid a tax to meet the interest due on the coupons. The legality of the tax was denied by some tax-payers of the county, but the court of last resort in the State having declared it lawful,[*] the money was collected and the coupons paid for a short time. The court, however, subsequently reviewed and re-

---

[*] McMillen *v.* The County Judge, 6 Iowa, 391.

versed its former decision; and the tax being no longer levied the coupons were no longer paid. A number of them being now in the hands of Mr. Edgar Thomson, of Phila-delphia, *cut off from the bonds to which they had been originally attached,* he brought suit in the Federal courts of Iowa to recover them; not producing, however, the bonds to which they had originally belonged.

The court charged:

1st. That the bonds or coupons sued on, were issued without authority of law, and were void.

2d. That the " Curative Act," of January, 1857, gave no validity to the bonds.

3d. That the plaintiff could not recover on the coupons unless he showed that he also owned at the time the several bonds from which they were cut.

4th. And *refused* to charge that if all branches of the State government of Iowa had held such railroad bonds to be valid at the time they were issued, no question could afterwards be made as to their validity.

The county having had judgment, the matter was now on error here, where the same kind of questions that have been so abundantly discussed in this court, of late, in *Gelpcke* v. *City of Dubuque ;** *Meyer* v. *Muscatine ;†* *Mercer County* v. *Hackett ;‡* *Seybert* v. *City of Pittsburgh ;§* *Van Hostrup* v. *Madison City ;‖* *Murray* v. *Lardner ;¶* *Sheboygan Co.* v. *Parker ;*** *Havemeyer* v. *Iowa Co.,*†† were raised and discussed by briefs anew; *Mr. Allison, for Lee County,* who sought to distinguish this case from any of those, contending that the constitution of Iowa restricted the legislature from authorizing the bonds; that this was now the construction given to the constitution by the Supreme Court of Iowa; that the vote and proceedings by which the bonds were authorized were irregular; that the " Curative Act" of 1857 was inoperative, and that if this were all otherwise yet that Thomson, who appeared to

---

| * 1 Wallace, 175. | † Id. 384. | ‡ Id. 83. |
| ₰ Id. 272. | ‖ Id. 291. | ¶ 2 Id. 110. |
| ** 3 Id. *supra* 93. | †† Id. *supra*, 294. | |

own nothing but the coupons, could not recover on them, without producing the bonds themselves.

*Messrs. Howell and Grant, contra.*

Mr. Justice DAVIS delivered the opinion of the court.*

There is hardly any question, connected with the species of securities on which this suit was brought, that has not been discussed and decided by this court; and it is unnecessary to do more in this opinion than reaffirm the general doctrines of the court on the subject, so far as they apply to the case in hand, without attempting to restate the reasons which were given for our decisions.

A county, or other municipal corporation, has no inherent right of legislation, and cannot subscribe for stock in a public improvement, unless authorized to do so by the legislature. Such a corporation acts wholly under a delegated authority, and can exercise no power which is not in express terms, or by fair implication, conferred upon it. But the legislature of a State, unless restrained by the organic law, has the right to authorize a municipal corporation to take stock in a railroad or other work of internal improvement, to borrow money to pay for it, and to levy a tax to repay the loan. And this authority can be conferred in such a manner, that the objects can be attained, either with or without the sanction of the popular vote.

It is insisted that the constitution of Iowa did lay a restraint on the legislature, and that consequently the county of Lee could have no right, under the constitution and laws of the State, to execute and issue the bonds in controversy. And we understand that the highest court of the State of Iowa, at the present time, adopt that view of the question; but when these bonds were issued, the courts of that State held that there was no defect of constitutional power, and that the legislature could lawfully authorize municipal corporations to subscribe to the capital stock of railroad com-

---

* Nelson, J., not having sat—having been indisposed—and Miller, J , not taking part in the decision.

panies. If the bonds in suit had been executed since the last decision in Iowa, they would be controlled by it; but the change in judicial decision cannot be allowed to render invalid contracts which, when made, were held to be lawful. The courts of Iowa having, when these bonds were issued, construed their constitution and laws so as to give them force and vitality, cannot, by a subsequent and contrary construction, destroy them.

But it is argued that when the county of Lee voted to take the stock for which these bonds were given, they attempted the exercise of a power which had not been delegated to them, or executed it so defectively, that their proceedings were without authority of law, and void.

It is not instructive to inquire into the different laws of Iowa under which this power is claimed to exist, because the legislature of that State, on the 28th day of January, 1857, by an act of confirmation, legalized the issue of these bonds. If the legislature could authorize this ratification, the bonds are valid, notwithstanding the submission of the question to the vote of the people, or the manner of taking the vote may have been informal and irregular. This act of confirmation, very soon after its passage, underwent an examination in the courts of Iowa, and it was held that the legislature possessed the power to pass it, and that the bonds were valid and binding on the county.* It is difficult to see how *this* power could be questioned, after the Supreme Court of the State had decided that there was no written limitation which inhibited the legislature from conferring on cities and counties, the right to take stock in a company organized to build a railroad, or other work of public improvement. If the legislature possessed the power to authorize the act to be done, it could, by a retrospective act, cure the evils which existed, because the power thus conferred had been irregularly executed. The question with the legislature was one of policy, and the determination made by it was conclusive.

Bonds with coupons, payable to bearer, are negotiable

---

* McMillen v. The County Judge, 6 Iowa, 391.

securities, and pass by delivery, and, in fact, have all the qualities and incidents of commercial paper.

It is not necessary that the holder of coupons, in order to recover on them, should own the bonds from which they are detached. The coupons are drawn so that they can be separated from the bonds, and like the bonds, are negotiable; and the owner of them can sue without the production of the bonds to which they were attached, or without being interested in them.

The foregoing views dispose of all the questions presented in this record, and it is unnecessary to refer in detail to the charge of the Circuit Court.

JUDGMENT REVERSED, with costs, and the cause remanded for further proceedings in conformity to the opinion of the court.

