McAdam, C. J.
Assuming, as we do, that coupons for interest, drawn so that they may be separated from the bonds, are negotiable securities, and that the holders may sue thereon without producing or being interested in the bonds (Thompson v. County of Lee, 3 Wall., 327; Com’rs of Knox Co. v. Aspinwall, 21 How., U. S., 539-546, and kindred cases), we hold that the purchasers of the coupons have no equities superior to those possessed by the holders of the bonds from which they are taken, and that the transferee of the coupons must look to the common security (the bond) and measure his rights and equities by that. Ketchum v. Duncan, 96 U. S., 659-670.
Where the coupons on their face refer to bonds, and purport to be for interest thereon, the purchaser is put upon inquiry for bonds, and is chargeable with notice of what they contain. McClure v. Township of Oxford, 94 U. S. 429.
The coupons are a mere device for convenience in collecting interest; they are evidence of the right to collect it, and may serve as vouchers when the interest is paid; but there is really but one contract (technically so called) for the payment of interest, and that is contained in the bond, the principal obligation. City v. Lamson, 9 Wall., 477.
The coupons do not change the nature of the security given by the bond—thus the plea of the statute of limitations is not a good defense to an action upon coupons when it would not be a defense to the bonds from which they are cut. City v. Lamson, supra.
If the bonds on their face refer to a mortgage, the purchaser must also consult that, for he takes subject to all the stipulations contained therein. Caylus v. N. Y. K. and S. R. R. Co., 10 Hun, 295.
In short, for the purpose of ascertaining the legal rights and equities of the parties, the bond, mortgage and coupons must be construed together, and interpreted so that the one may harmonize with the other as far as possible, that effect may be given to all. This is but another mode of applying the familiar principle that instruments simultaneously executed, relating to the same subject matter, must be construed together, so that the general purpose of the *252 whole may control the interpretation or apparent purpose of each. Applying these principles to the present case, we find by an inspection of the mortgage, no difficulty in discovering that the general scheme and purpose of the parties, were that the general fund (the railroad) to which all the stockholders have the right to resort for satisfaction of their debts, should be saved from all legal proceedings at the option “of the majority in interest of the holders of the bonds secured by said mortgages ” who were thereby authorized to instruct the trustees “to waive any default which might be made in the payment of the money thereby secured, or any part thereof.” '
The default was waived by the trustees at the request of more than a majority in interest of the bondholders given in conformity to this power, and its necessary effect was to postpone the payment of the interest on the bonded debt whether represented by coupons or not.
There was no default in the payment of principal, and the necessary effect of waiving the default was to waive the non-payment of interest, for that was the only portion of the obligation in respect to which default was made.
That this waiver was contemplated by the general scheme set forth in the mortgage is apparent from the phraseology of that instrument, and from the fact that the success of the scheme in the full practical sense of that term depends upon this interpretation. The mortgage secured the interest as well as the principal, the former being a mere incident of the latter. Accessorimn non ducit, sed sequitur, suum princqxde, and the trustees were to waive any default which might be made in the payment of the money secured or of “any part thereof.” Nó discrimination is made between principal and interest, for the language is general and embraces both, and it is a maxim of the law that if one thing becomes so intimately connected with or dependent upon another as to be a mere incident or accessory of the other, it acquires the same nature or character as the subject or right to which it becomes accessory. The circumstance that holders of bonds aggregating $860,000 at once assented to the arrangement and acquiesced in the waiver shows that to their understanding the general purpose and plan justified the construction which we have placed upon the mortgage in question. The only objectors to this interpretation were the holders of bonds representing $40,000 only of the $900,000 in bonds secured by the mortgage aforesaid.
When the purpose of contracting parties is legally ascertained, courts are bound to give that effect to the contract which will make the intent effectual. Contracts deliberately made are to be upheld and enforced, and not impaired *253 or rendered nugatory. In short, courts should give life and vigor to contracts rather than destroy them—should interpret their spirit and meaning into language plain and unmistakable rather than allow rights under living contracts to go unprotected and the contracts to go unperformed.
We propose to give practical effect to this contract, and therefore hold that the arrangement made was legally authorized and carried into effect; that it concluded all the bondholders, and, as a necessary consequence, the holders of detached coupons, and that the plaintiff, by reason of the waiver and extension, had no existing right of action when he brought this suit.
For these reasons, the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.
Mehbras and Ehrlick, JJ., concur.
Note.—Affirmed on appeal by the New York Common Pleas.