## MEMPHIS *v.* MEMPHIS SAVINGS BANK.

## (*Jackson.*    May 19, 1897.)

1. STATUTES.  *Repeal.*

   A provision in a statute that bonds authorized to be issued by a city in place of existing bonds should Be payable thirty years after date, but redeemable at par at any time after the expiration of six years from their date, is completely abrogated by a subsequent act authorizing the city to compromise and fund its indebtedness on "such terms" as may be agreed on between it and any creditor, and expressly repealing so much of the prior statute as "prescribes and limits the terms" on which the compromise may be made, notwithstanding a further provision that all the provisions of the prior act are "adopted and re-enacted," except so far as they are repealed, amended or modified in the latter act, or are inconsistent with its provisions.

   Acts construed: Acts 1883, Ch. 170; Acts 1885, Ch. 2 (Ex. Sess.)

2. MUNICIPAL BONDS.  *Of city of Memphis.*

   Thirty-year bonds of the city of Memphis issued under Acts 1885, Ch. 2 (Ex. Sess.), are not redeemable, without consent of bondholder, before their maturity.

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. LEE THORNTON, Sp. Ch.

METCALF & WALKER for Memphis.

TURLEY & WRIGHT for Company.

McALISTER, J. The question presented for determination upon this record, is in respect of the right of the city of Memphis to call in for redemption a certain series of its funded bonds. The case was heard by the Special Chancellor, Hon. Lee Thornton, upon a stipulation of agreed facts, and a decree pronounced dismissing the suit. The city appealed, and has assigned errors.

The particular bond which the city claimed the right to redeem, was issued by the Taxing District of Shelby County, on July 1, 1885, and, on its face, is payable in thirty years, to wit, on July 1, 1915. The city claims the right of redemption by virtue of Sec. 7, Ch. 170, Acts 1883, viz.: "That the bonds hereby authorized to be issued shall be dated January 1, 1883. They shall be payable thirty years after their date, but shall be redeemable, at par, by the municipal or taxing district, or any successor thereof, at any time after the expiration of six years from their date." The contention made on behalf of the bondholders is, that Section 7 of the Act of 1883, just quoted, was repealed by Chapter 2 of the Acts of the Extra Session of 1885, and this is the only question we are asked to decide.

It may be remarked, at the outset, that the bond in question does not, on its face, import any right of redemption until after its maturity, in July, 1915. The insistence on behalf of the Memphis Savings Bank is, that the bond embodies the whole contract

between the parties, and is not subject to call by the Act of 1885, under which it was issued. The issue of law thus presented must be settled upon an examination of the statutes in question.

In 1883, the Legislature of the State, for the purpose of enabling the city of Memphis, then known as the Taxing District of Shelby County, to fund a large amount of bonded indebtedness then outstanding against it, and weighing heavily upon its taxpayers, passed an Act, entitled "An Act to empower municipal corporations and taxing districts to compromise and fund their indebtedness, to issue bonds for the amount so funded, and to provide means for the payment of the same, as compromised."

The second section of said Act authorized a compromise of said outstanding bonds, at fifty cents on the dollar, and the issuance of coupon bonds for the amount of such compromise, bearing interest at six per cent. per annum, and further provides that for the first three years three per cent. of such interest shall be paid and three per cent. shall be capitalized, and, for the next three years, four per. cent. interest shall be paid and two per cent. capitalized, and thereafter six per cent. shall be paid. The fourth section of said Act creates an Auditing Board. The fifth and sixth sections define the duties of said Auditing Board, who are especially charged with the duty of examining the bonds outstanding which are presented, and, if genuine, to fund the same in accordance with the provisions of this Act. The

seventh section of this Act, already quoted, provides that said funded bonds shall be payable thirty years after their date, but shall be redeemable at par, etc., at any time after the expiration of six years from their date. The eighth section of this Act prescribes and sets out the exact form of the compromise bond to be issued, in which it is stipulated that it "shall be redeemable at any time after January 1, 1889."

It appears that while many of the creditors accepted the compromise adjustment offered by this Act, and funded their bonds, a large proportion refused to accept. It is stated that the holders who declined to fund represented probably two million dollars of bonded indebtedness. It accordingly became necessary to obtain further legislation to enable the city to offer more acceptable terms to its creditors. Chapter 2, of the Acts of the Extra Session of 1885, was then passed, on June 5, 1885, and approved June 6, 1885. Said Act in terms provides "that any of said taxing districts may compromise, settle, and fund said indebtedness, upon such terms as may be agreed upon between it and any creditor or holder of its indebtedness, and so much of said Act, Chapter 170 of the Act of 1883, and so much of the Act passed February 16, 1885, amendatory thereof, as prescribe and limit the terms upon which, and the rates at which, such compromise may be made, and the time within which the same shall be made, are hereby repealed."

The third and fourth sections of said Act, after

changing the personnel of the Auditing Board created by the Acts of 1883 and 1885, makes their decision as to the validity of any of the indebtedness offered for compromise and refunding, final.

By the fifth section thereof, it is provided "that whenever any bond, coupon, judgment, or other indebtedness or claim against the taxing district is presented to be compromised, settled, or funded, and whenever said board shall determine that such claim is just and valid, the said board may then agree with the holder of such claim as to terms or rates at which the same will be compromised, and as to the form and terms of the bonds into which, at the rate agreed upon, the same shall be funded; and the said taxing district is hereby vested with full power and authority to carry out and perform such agreement and compromise, and shall issue, in its corporate name, a new coupon bond, in such form and terms, and bearing such rate of interest, not exceeding six per cent. per annum, as may be agreed upon between the creditor and said board."

The sixth section of said Act is important, and reads as follows: "That all of the provisions of said Act, Chapter 170 of the Acts of 1883, are hereby adopted and re-enacted as a part of this Act, except so far as the same may be repealed, amended, or modified herein, or are inconsistent with the provisions of this Act."

It should be noticed, also, that by the caption of this Act, it is in express terms an Act to amend

the Acts of 1883 and 1885, already referred to. The bond in suit recites on its face that it was issued under and in pursuance of, and in conformity with an Act passed on the fifth of June, 1885. The city, claiming the right so to do, has undertaken to call and pay that bond, and this agreed case is made up in order to test the question of its rightful power so to do.

The contentions on the question here involved are thus stated by counsel:

"1. In behalf of the city it is contended that Section 7, of Chapter 170, of the Acts of 1883, remained unrepealed throughout the legislation in question; that the city had no power, therefore, to issue a bond not subject to call after the lapse of six years; and, lastly, even if it had such power, it had not undertaken so to do—the city having neither by ordinance nor by the terms of the bond spoken affirmatively on this question—the clear implication therefore being, that it intended to leave the bonds subject to call by virtue of the legislation itself.

"2. On the other hand, it is contended for the bondholder that the seventh and eighth sections of the Act of 1883 were repealed in so far as to empower the city to make just such a compromise, and issue a bond in just such form as it might see fit to make, and as the creditor might see fit to accept; that, having issued a bond running absolutely until the first day of January, 1915, and having

said not a word by bond or ordinance as to the right to call the same, at any time before maturity the bond itself must be taken to express the whole contract of the parties, and therefore it is not subject to call.''

We think the effect of the Act of June 5, 1885, was to remove the restrictions imposed upon the Auditing Board by the Act of 1883, both as to the rate of compromise and as to the terms and form of the bond to be issued. It is quite clear that the city, having failed to accomplish the funding of all its bonded indebtedness under the provisions of the Act of 1883, either on account of the low rate of compromise authorized (fifty cents on the dollar) or on account of the redemption feature in that Act, the object of the Legislature in the passage of the Act of June 5, 1885, was to enable the city, through the Auditing Board, to offer to its creditors more acceptable terms of settlement; hence the Act of 1885 provided that the Auditing Board may agree with the holder of such claim as to the terms or rates at which the same will be compromised, and as to the form and terms of the bonds into which, at the rate agreed upon, the same shall be funded.

As already seen, the Act of 1883 expressly provided that the bonds issued thereunder should be subject to call at any time after the expiration of six years from their date, and prescribed the form of bond to be issued, which recited on its face this

redemption feature.    But the Act of 1885 delegates to the Auditing Board, without the imposition of any limitations upon its authority, the right to make a convention with the bondholder in. respect of the rate of compromise and terms of settlement.    By the second section of the Act of 1885, ''so much of the Act of 1883 as prescribes and limits the terms upon which and the rates at which such compromise may be made, and the time within which the same shall be made, are expressly repealed.'' The sixth section of that Act then re-enacts all the provisions of the Act of 1883, except so far as the same may be repealed, amended, or modified herein, or are inconsistent with the provisions of this Act.

It needs no construction to demonstrate that the very enlarged powers and functions conferred by the Act of 1885 upon the Auditing Board, in making rates and terms of compromise adjustment with the bond-holder, as well as the right to fix the form of the bond to be issued, is wholly inconsistent with the limitations imposed upon the authority of the Auditing Board under the Act of 1883.

The conclusion is inevitable that the provisions in the Act of 1885, in respect of the right of the city to redeem these bonds after the expiration of six years, was entirely abrogated by the provisions of the Act of 1885. Such, evidently, was the construction given this Act both by the Auditing Board and the city authorities, for, while the bonds issued

under the Act of 1883 all recited this redemption feature, it was entirely omitted from the bonds issued after the passage of the Act of June 5, 1885. There is nothing in the latter Act prohibiting the Auditing Board from making a contract with the bondholder that his funded bond should be subject to call at any time that might be stipulated. But a bond issued without such a stipulation, after the passage of the Act of 1885, was in nowise subject to call under the provision of the Act of 1883. As was well said in argument, it might, with equal propriety and· by the same parity of reasoning, be claimed that, because Section 2, Chapter 170, Acts of 1883, authorized a compromise at fifty cents on the dollar, that under Chapter 2, Acts Extra Session 1885, the Auditing Board could compromise at no higher rate.

We think the very object of the passage of the Act of 1885 was to remove the restrictions contained in the Act of 1883, which prevented the compromise, adjustment, and funding of a large proportion of the city's indebtedness. We find no difficulty in reaching the conclusion that this bond is not subject to call, and the decree is affirmed with costs.