STATE OF MISSOURI at the relation of the BOARD OF FUND COMMISSIONERS and GUY B. PARK, RICHARD R. NACY and ROY MCKITTRICK, as members of and constituting a majority of the Board of Fund Commissioners of the State, Relators, v. FORREST SMITH, State Auditor.—96 S. W. (2d) 348.

Court en Banc, August 13, 1936.

*Roy McKittrick*, Attorney General, and *Harry G. Waltner, Jr.*, Assistant Attorney General, for relators.

*John L. Graves* and *Charles & Trauernicht* for respondent.

COLLET, J.—Original proceeding in mandamus to compel the State Auditor to register and certify to the validity of a series of bonds known and designated as "State of Missouri Building Refunding Bonds" to be issued and sold for the purpose of refunding $3,000,000 of three per cent State of Missouri Building Bonds, Series A.

On April 11, 1935, a resolution was introduced in the House of Representatives of the Fifty-eighth General Assembly, calling for the appointment of a committee to consult with the Board of Fund Commissioners for the purpose of determining what course could and should be pursued to accomplish a saving on the bonded indebtedness of the State. The resolution was duly adopted, the committee was appointed, and the conference held, with the result that the committee reported to the House of Representatives recommending the refunding of the outstanding bonded indebtedness as feasible and advisable and for the best interests of the State. Pursuant to that report the House of Representatives adopted a resolution calling upon the Board of Fund Commissioners to take any and all necessary action for the purpose of carrying out the recommendation of the House committee. Thereafter on May 22, 1935, the Attorney General rendered an opinion to the General Assembly in which opinion that officer advised the General Assembly that Section 11500, Revised Statutes 1929, authorized the refunding of the outstanding bonded indebtedness of the State when it would be to the advantage of the State to do so. The opinion further held that Section 11500 was a part of and should be read into all outstanding bonds. Thereafter on December 31, 1935, the Board of Fund Commissioners duly adopted a resolution in proper form reciting that because of existing low rates of interest it was to the advantage of the State to refund its bonded indebtedness, and, since it was important that the powers of the Board of Fund Commissioners under Section 11500 be definitely determined, called upon the State Auditor to register the refunding bonds and certify the issue. The State Auditor refused to do so. The present suit is brought at the relation of the majority of the members of the Fund Commission to compel the State Auditor to register and certify the bonds. Upon the filling of the application for the writ of mandamus our alternative writ issued. Respondent duly filed his return admitting all the allegations of fact contained in

relator's application, but setting up a number of grounds for the discharge of the alternative writ. Relator then filed motion for judgment on the pleadings.

The issues thus raised are purely question of law and, in the final analysis, all depend upon the construction to be given Section 11500, Revised Statutes 1929. That section is as follows:

"(The board of fund commissioners are hereby authorized and empowered to enter into contracts, and to refund any part of the bonded indebtedness of the state, whenever they can do so to the advantage of the state in change of time, terms of payment or interest payment upon the indebtedness which it is proposed to refund), and to this end they are authorized and empowered to cause new bonds to be prepared, issued, sold or exchanged for outstanding bonds of such denominations, dates and rate of interest as they may deem proper, payable at such times and places, principal and interest, as they may agree upon as being to the best interests of the state: *Provided, always*, that the rate of interest of said bonds to be issued shall not exceed three and one-half per centum per annum, and that such 'refunding bonds' fall due, or become redeemable at the pleasure of the state, at such dates as will permit the redemption or payment, at par, of at least two hundred and fifty thousand dollars of the bonded debt of the state every year, until all bonds of the state are paid off. All bonds or state certificates of indebtedness hereafter issued by this state under the direction of the board of fund commissioners shall be signed by the governor, countersigned by the secretary of state, with the great seal of the state attached, and the coupons for interest shall have a facsimile of the state treasurer's signature engraved thereon. The bonds shall be registered by the state auditor, to which he shall certify on each bond, and authenticate such registration by his signature and his official seal attached: *Provided*, that the bonds known as the 'capitol bonds' for the erection of a state capitol shall not be refunded beyond the final maturity as specified in the act authorizing the same."

Relators contend that the bracketed language of this statute requires them to refund these bonds because such refunding will result in financial advantage to the State. They are not due, no provision is incorporated in the bonds authorizing them to be called prior to maturity, and the holders of the bonds do not agree that they may be refunded. Respondent insists that Section 11500, supra, must be construed as applying only to bonds which are past due and that it does not authorize relators to refund or call bonds not due, thereby violating the terms of the contract which the bonds constitute, which contract is to the effect that the State will pay interest thereon at the stated rate of three per cent until the maturity date fixed in the bond.

210

■ The fact that financial advantage will result to the State was alleged by relators and admitted by respondent. If Section 11500 applies to nonoption bonds which have not yet reached their stated maturity date, relators must prevail as the rule is well established that all pertinent statutes and constitutional provisions are to be read into and become a part of the contract set forth by the terms of the bonds. [Natl. Bank of the Republic v. City of St. Joseph, 31 Fed. 216; United States ex rel. Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403.] It is agreed that all related statutory and constitutional provisions should be read together in arriving at the true and proper construction to be given Section 11500.

■ Section 11500, supra, was enacted in 1891 (Laws 1891, p. 16). As originally enacted it is identical with the present act with the exception of two changes made in 1913 (Laws 1913, p. 772). Those changes consisted of an increase in the permissible interest rate on refunding bonds from three per cent to three and one-half per cent and the enlargement of the purposes for which such bonds could be issued to include changes in time and terms of payment in addition to the already existing purpose of reducing the rate of interest. Section 11500 standing alone might well be construed in the manner suggested by relators since the use of the language: "The board of fund commissioners are hereby authorized and empowered to . . . refund any part of the bonded indebtedness of the state, whenever they can do so to the advantage of the state," is sufficiently broad to justify, if not compel, the conclusion that *any* outstanding bond might be refunded at any time the State would benefit thereby. But when Section 11500, supra, and Section 11499, Revised Statutes 1929, are read together it is clearly apparent that Section 11500 does not apply to bonds of the character herein involved. Section 11499 is as follows:

"Whenever any of the option bonds of this state now outstanding, known as the three and a half per cent funding bonds, issued under the act of March 31, 1885—or any option bonds that may hereafter be issued—become redeemable at the pleasure of the state, and there is money in the state sinking fund not required to meet maturing bonds, it shall be the duty of the board of fund commissioners to call in for redemption such amount of such bonds as may be needed to exhaust the money in the state sinking fund appropriated for that purpose by the general assembly, by giving notice of the numbers and dates of the bonds called in for redemption, by publication for twenty days in two metropolitan daily newspapers, and if the bonds described in such notice are not presented for redemption at the state's fiscal agency on the day mentioned in the published notice, the interest on such bonds shall cease on that day."

By the use of the language: "Whenever any of the option bonds

of this state now outstanding, known as the three and one-half per cent funding bonds, issued under the act of March 31, 1885—or any option bonds that may hereafter be issued—become redeemable," it is clear that the Legislature intended by the words, "or any option bonds that may hereafter be issued," to describe bonds of the same character as the three and one-half per cent funding bonds, issued under the Act of March 31, 1885. Reference to the latter act discloses that bonds issued thereunder were required to be "payable in twenty years from the date thereof, but redeemable at any time at the pleasure of the state, after five years from the date thereof." [Laws 1885, p. 38.]

Section 11499 therefore clearly recognizes as a distinct class those bonds which contain a specific provision, incorporated in the bond, authorizing the calling of the bonds for redemption and the payment thereof at some date short of the maturity date stated in the bond and designates those bonds falling within that classification *option bonds*. Having established and recognized "option bonds" as a distinct class it is unreasonable to assume that the Legislature abolished the distinction and struck down the classification in the very next section of the same act which created it. But, if the meaning should be given Section 11500 for which relators contend, all outstanding bonds would automatically become option bonds and Section 11499 would be utterly useless and inapplicable to any bonds issued after the enactment of Section 11500. Or, stated differently, if Section 11500 authorizes the calling and redemption of any and all outstanding bonds at any time advantage will thereby result to the State, and that section is to be read into all bonds issued subsequent to the enactment of that section, then all such bonds must certainly be option bonds of the character described in Section 11499 and the latter section rendered meaningless. No such intention will be charged to the Legislature by the courts if it can be avoided. The only possible construction which can be given Section 11500 which will not render Section 11499 nugatory is that the former section applies only to the refunding of nonoption bonds at their stated maturity or by contractual agreement, and to the refunding of option bonds during the period of the option when advantage to the State will result. Such a construction is reasonable and in entire accord with the principle expressed by the General Assembly in the following introductory words of its Act of March 31, 1885:

"Whereas, The maintenance of the credit of the state is of the utmost importance and should ever be guarded with the most jealous care."

It is not only possible but is very probable that when the General Assembly authorized the fund commissioners to refund any part of the bonded indebtedness of the State, "whenever they can do so,"

etc., it was understood that bonds then outstanding or which might thereafter be issued containing the solemn promise of the State to pay interest at an agreed rate for a definite length of time constituted such an insurmountable and clearly recognized obstacle to the changing of the contract without the agreement of both parties that it was not deemed necessary to incorporate the exception in the act.

The bonds herein involved, having a definite maturity date stated therein, containing the unqualified promise to pay interest at a stated rate for a definite length of time, and issued under constitutional authority containing as its only direction relative to maturity the words: "and maturing not later than thirty-five (35) years from their date" (Sec. 44d, Art. IV, Const., Laws 1933-34, p. 174), are not option bonds and cannot be refunded prior to maturity except by agreement. Since the bonds are not due and there is no agreement that they may be refunded, it necessarily follows that the Board of Fund Commissioners is without authority to issue refunding bonds for the purpose of refunding the present issue.

Both parties contend that the refunding of the State Capitol Building Bonds by the State Board of Fund Commissioners in 1913 furnished a precedent for their respective contentions. Those bonds were refunded by agreement between the State and the holders of a large majority of the outstanding bonds. No element of coercion was involved. The small percentage of the bonds which were not voluntarily surrendered were paid according to the terms of the original contract. The action of the Board of Fund Commissioners in refunding those bonds therefore furnishes no precedent of value for guidance in this action.

While great weight and deference will be given by the courts to the legislative interpretation of acts of the General Assembly as indicated in this case by the House resolution above referred to, such interpretations cannot be binding or conclusive when opposed to the clear meaning of the act.

Our alternative writ, heretofore issued, should be quashed. It is so ordered. All concur.