**KANSAS CITY LIFE INS. CO. v. EVANGE-
LINE PARISH SCHOOL BOARD.**

Civil Action No. 1104.

District Court, W. D. Louisiana,
Opelousas Division.

Nov. 30, 1944.

George M. Wallace, of Baton Rouge,
La., for plaintiff.

Chapman & Cutler, of Chicago, Ill., and
Charles & Trauernicht and Seward Mc-
Kittrick, all of St. Louis, Mo., amici curiae.

E. Herman Guillory, Dist. Atty., of
Ville Platte, La., and B. A. Campbell and
Willis 'C. McDonald, both of New Orleans,
La., for defendant.

PORTERIE, District Judge.

The Evangeline Parish School Board, as
the governing authority of School District
No. 1 of the Fifth Police Jury Ward of
the Parish of Evangeline, State of Louisi-
ana, on February 18, 1937, issued $55,000
in principal amount of its bonds, dated
January 1, 1937, each in the denomina-
tion of $500, bearing interest at 5%, the
bonds maturing serially January 1, 1938,
to January 1, 1962, and the interest pay-
able annually.  Bonds Nos. 1 to 15, which
matured from January 1, 1938, to January

1, 1944, and all interest coupons maturing during the same period, were paid in due course at maturity and according to their tenor, leaving bonds Nos. 16 to 110, inclusive, of the principal amount of $47,500, and all of the unpaid interest coupons thereto attached, outstanding.

On June 20, 1944, the school board adopted its resolution providing for the refunding of said bonds, and for the issuance of $47,500 of principal amount of refunding bonds, each of the denomination of $500, bearing 3% per annum interest represented by coupons, payable semi-annually, the same principal amount as in the original issue falling due in the same years as provided for the maturities of the bonds to be refunded, and providing, further, in Section 12 of the resolution of June 20, 1944, for the sale of the refunding bonds, and call and redemption of the outstanding bonds, with payment of their principal and interest only to date fixed for redemption.

The plaintiff, Kansas City Life Insurance Company, is the owner and holder in due course of all of the bonds which the school board proposes to refund.

A controversy arose between the plaintiff and the defendant school board, the plaintiff contending that it is entitled to payment in due course at maturity, or after, according to their tenor, of all of the bonds and the interest coupons thereto attached, and the school board contending that it had the authority under Section 14(g) of Article XIV of the Constitution of Louisiana, as amended by Act No. 85 of 1934, to refund the outstanding bonds dated January 1, 1937, and to call the same for payment of principal and interest only to the date of redemption.

Plaintiff has instituted this suit for a declaratory judgment and an injunction to prohibit such calling for redemption of such bonds and interest coupons in advance of their maturity, and attacking the action of the school board as being in violation of the contract and due process clauses of both the Louisiana and United States Constitutions.

The plaintiff sets out in his complaint the following allegations:

1. That said bonds and the interest coupons thereto attached, the provisions of the Constitution and laws of the State of Louisiana, and the resolution of February 18, 1937, authorizing the issuance,

contain no provision authorizing the call and redemption of said bonds.

2. That said bonds have all of the qualities of negotiable instruments under the Law Merchant and are incontestable in plaintiff's hands as provided in Section 42 of Act No. 46 of the Extra Session of 1921, Louisiana Legislature.

3. That said bonds are negotiable instruments under Section 14(a) of Article XIV of the Constitution of Louisiana, as amended by Acts 51 and 261 of 1926, of the Legislature of Louisiana.

4. That plaintiff's right as the holder in due course is to payment in due course at or after maturity of its several bonds and the interest coupons thereto attached, such right being fixed by the Law Merchant, by paragraph (h) of Section 14 of Article XIV of the Constitution of Louisiana, and Section 29 of Act 46 of 1921, providing that such bonds shall become due in annual installments and also by the terms and conditions of the said bonds and the resolution of February 18, 1937, authorizing the issuance and by Act 64 of 1904, the negotiable instrument law of Louisiana.

5. Plaintiff has the right as holder of the bonds in due course to enforce the imposition and collection of sufficient taxes for the payment thereof in principal and interest according to their tenor and in due course.

6. That Section 12 of the resolution adopted on June 20, 1944, is null and void in so far as same provides for call, redemption and payment of the outstanding bonds refunded and the interest thereon, in that it impairs the obligations of the contracts of plaintiff in violation of Section 10, Article I of the Constitution of the United States and Section 15 of Article IV of the Constitution of Louisiana, and deprives the plaintiff of its property without due process of law in violation of the 14th amendment of the Constitution of the United States and Section 2 of Article I of the Constitution of Louisiana.

The defendant summarizes in brief the claim of the plaintiff, as follows:

"The plaintiff has presented to this honorable court a demand that the Parish School Board of the Parish of Evangeline, Louisiana, as the governing authority of School District No. 1 of the Fifth Police Jury Ward of the Parish of Evangeline, Louisiana, be restrained and enjoined from

exercising the full powers and authority granted to and invested in such Parish School Board by the Constitution, the organic law of the State of Louisiana, as specifically set out in Article XIV, Section 14(g) of the Constitution of the State of Louisiana for the year 1921, as amended, by Act 85 of 1934, Louisiana Legislature, and adopted by vote of the electorate of the State of Louisiana on November 6, 1934, to refund the outstanding bonded indebtedness of said School District No. 1 as provided for in the resolution adopted on June 20, 1944, by the Parish School Board of the Parish of Evangeline, Louisiana, as the governing authority of said School District for the purpose of saving the taxpayers of this School District thousands of dollars by securing a lower rate of interest."

One of the amici curiae in brief says the question before the court is:

"We believe that the sole question to be determined by the Court is whether the Evangeline Parish School Board, on behalf of School District No. 1, has the right to call in for payment and redemption the outstanding bonds above-described, prior to their maturity and upon such call and upon the payment of the principal of said bonds with accrued interest to the date of call, to prevent the accruing of further interest on said bonds, and to avoid the necessity of paying the coupons attached to the bonds which come due after the call date."

Article XIV, Section 14(g), of the Constitution of the State of Louisiana as amended in 1934, provides, among other things, that:

"For the purpose of re-adjusting, refunding, extending and unifying the whole or any part of its outstanding bonds and certificates of indebtedness, any political subdivision [of the State] specified in Section 14(a) of this Article, as amended, and any Parish School Board, shall have full power and authority to issue negotiable interest bearing refunding bonds in an amount not exceeding the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon.

\*  \*  \*  \*  \*

"Refunding bonds issued hereunder shall be governed by the provisions of Section 14(h) of this Article; provided that the maturities shall be so fixed as to effect a consequent reduction of the annual rate of taxes or annual forced contributions required, or annual revenues pledged.

"Upon the issuance of refunding bonds, as provided herein, by any political subdivision or Parish School Board, any holder of any outstanding bond or certificate of indebtedness of any such political subdivision or Parish School Board, whether matured or unmatured, may upon surrendering such bond or certificate of indebtedness to the issuing authority, receive in exchange and substitution therefor, a refunding bond of the same amount, bearing interest not exceeding six (6%) per centum per annum, maturing not longer than forty (40) years from date of such refunding bonds. Provided, that all or any part of the refunding bonds issued under the provisions of this paragraph, may in the discretion of the issuing authority, be sold at not less than par, after advertisement in such publication as the issuing authority may select, once a week for three weeks, and the funds realized from the sale thereof shall be applied exclusively to the payment of the bonds or certificates of indebtedness refunded.

\*  \*  \*  \*  \*

"The governing body of any such subdivision and the Parish School Boards shall have full power and authority to adopt all ordinances or resolutions necessary to carry the provisions of this paragraph into effect. No proceedings in respect to the issuance of such refunding bonds shall be necessary, except such as are contemplated by this paragraph, which shall be self-operative, and no further legislation shall be required to effect the same. \*  \*"

A review of the history of the constitutional and statutory provisions enabling the issuance of such refunding bonds, taken verbatim, after checking, from one of the briefs of amici curiae, follows:

"It is unnecessary to go back farther than 1921. In that year a new constitution was adopted by the State of Louisiana and, for the purpose of putting into effect the bond provisions of the new constitution, an entirely new statute authorizing the issuance of municipal bonds was enacted.

"The bond provisions of the 1921 constitution were contained in Section 14 of Article 14. This section as originally adopted contained general authorization for the issuance of bonds by parishes, municipal corporations and all other types of political subdivisions except levee districts,

expressly provided (subsection h) that all bonds so issued were to become due in annual installments beginning not more than three years after the date of issuance, and provided (subsection g) that for the purpose of refunding the whole or any part of its outstanding bonds, any subdivision might when authorized at an election issue refunding bonds not exceeding in amount the bonds refunded.

"In order to make effective the provisions of Section 14 the Legislature enacted Act 46 of 1921, Ex.Sess. (now Sections 8854 to 8899, Louisiana General Statutes) setting up a complete procedure for the issuance of bonds. Section 32 of Act 46 carried into effect the authorization for refunding bonds contained in subsection (g) of Section 14. By this section the various subdivisions were authorized to issue bonds for the purpose of refunding their outstanding bonds. The election required by the other provisions of Act 46 was required to be held, and the section provided that the proceedings to authorize and issue the refunding bonds should conform to the provisions of the act for issuing other bonds. Section 36 of the act expressly required all bonds issued under the act to be sold on sealed bids. It resulted that all refunding bonds issued were required to be sold and the proceeds applied to the payment of the bonds refunded, and that an exchange of refunding bonds for outstanding bonds was not authorized.

"Refunding operations under Act 46 were handicapped by reason of the lack of authority to deliver refunding bonds in exchange for outstanding bonds. Accordingly, Section 32 was amended, once in 1924 and once in 1932. As so amended, each series of refunding bonds was required to be largely identical as to detail, except maturity and interest rate, with the corresponding series of bonds refunded, provision was made pursuant to which the refunding bonds were required to be delivered through the State Treasurer in exchange for the outstanding bonds, and provisions was made under which the refunding bonds could be deposited with the State Treasurer and retained by the Treasurer if the outstanding bonds were not surrendered. An election was of course still required by both the statute and the constitution.

"By 1934 the economic depression was well under way, many of the municipalities and political subdivisions of Louisiana were finding it difficult to meet current maturities of their indebtedness, and wide spread refunding was becoming necessary. These refundings were being rendered more difficult and needlessly expensive by the election requirement of subsection g of Section 14, and the requirement of Section 32 of Act 46 as it then existed that the details of the refunding bonds be largely identical with the details of the outstanding bonds was making it difficult to issue refunding bonds in such manner that the necessary relief could be had. Therefore, the 1934 Legislature adopted Act Number 85, proposing an amendment to subsection g of Section 14. As amended, the requirement for the election was eliminated, and the issuing subdivision was authorized either to deliver its refunding bonds in exchange for the bonds which were to be refunded, or in its discretion to sell the refunding bonds and apply the proceeds to the payment of the bonds refunded. There were thus combined in the amendment the authority which had originally existed in Act 46 to sell the refunding bonds, and the authority which was added by the later amendment to issue refunding bonds in exchange for outstanding bonds. In order to make it unnecessary to wait for the 1936 Legislature to meet before refunding bonds could be issued under the revised procedure, the constitutional amendment was made self-operative. The amendment was ratified by the voters at the 1934 general election.

"Subsection g, as amended, in describing its scope and in authorizing the issuance of refunding bonds, retained practically the identical language which it had contained in its original form: 'For the purpose of re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds and certificates of indebtedness', any political subdivision may issue refunding bonds. The amended subsection then provides the manner in which the refunding bonds are to be paid, provides—and this is significant—that subsection h of Section 14 shall be applicable, requires maturities to be so fixed as to reduce the necessary taxes, and then provides that any holder of an outstanding bond, whether matured or unmatured, *may* upon surrendering the bond receive a refunding bond in exchange, but that the governing body of the subdivision may in its discretion sell the refunding bonds, in which case the refunding bond pro-

ceeds must be applied exclusively to the payment of the bonds refunded. It seems to us so clear as to require no argument that the provision permitting the refunding bonds to be sold was not intended to eliminate the previously stated stipulation for the voluntary surrender of the outstanding bonds, but was intended also to be applicable only where the corresponding outstanding bonds are, either through maturity or voluntary surrender for payment by the holder, available for payment, the choice being given the holder who wishes to surrender his bond, to accept either payment in money or a refunding bond in exchange. It nevertheless appears to be this language upon which defendants are relying to support their contention that the holders of the outstanding bonds issued by the municipal corporations and political subdivisions in Louisiana can be compelled against their wishes to surrender their bonds for payment in advance of the maturity dates which were agreed upon between the issuers and the holders at the time the bonds were originally issued."

The resolution as adopted on February 18, 1937, authorizing the issuance of bonds held by the plaintiff, contained, among other things, the following:

"Section 1. That in compliance with the terms and provisions of Article XIV, Section 14 of the Constitution of the State of Louisiana for the year 1921 as amended, and Act 46 of the Legislature of Louisiana for the year 1921, as amended * * the governing authority of said School District does hereby authorize the issuance of Fifty Five Thousand ($55,000.00) Dollars of School Bonds of School District No. 1 of the Fifth Police Jury Ward of the Parish of Evangeline, State of Louisiana."

Section 3 sets out the form of the bonds and reads in part as follows:

"Know All Men by These Presents: that School District No. 1 of the Fifth Police Jury Ward of the Parish of Evangeline, State of Louisiana, acknowledges itself to owe and for value received, hereby promises to pay to bearer on the first day of January, 19—, the sum of $500.00 in lawful money of the United States of America, with interest thereon at the rate of five (5%) per centum per annum from date hereof until paid * * *

"This bond is one of a series of bonds of like date, amount and tenor except as to number and maturity, numbered 1 to 116, both inclusive, aggregating the principal sum of Fifty Five Thousand ($55,000.-00) Dollars issued * * * under and by virtue of the authority conferred by Article XIV, Section 14 of the Constitution of the State of Louisiana for the year 1921 as amended, Act 46 of the Legislature of the State of Louisiana for the year 1921 as amended, and other statutory authority supplemental thereto."

These bonds held by the plaintiff were issued in 1937 and at the time of the issuance Article XIV, Section 14(g), as amended in 1934, was then and is now the organic law of the State of Louisiana. This constitutional provision authorized the refunding of the bonds issued and the sale thereof at any interest rate not exceeding six (6%) per centum per annum and the application of the proceeds therefrom to the payment of the bonds issued. Any holder of the bonds so issued, whether the original purchasers or holder in due course, was confronted with the constitutional and statutory authority under which they were issued, and that the bonds were subject to refund by the issuing authority. Just what is the nature of this refund, and under what conditions may it be exercised are the questions to be answered in this case. The resolution of February 18, 1937, set it out in the proceedings and in the bond form that such bonds were issued under and by virtue of the authority conferred by Article XIV, Section 14, of the Constitution of the State of Louisiana, as amended, and this in itself, it is contended, was notice to the holder that the bonds were subject to call and redemption by the issuing body.

Not that the views of the writer of this opinion, gathered by him at the time that he was the Attorney General of the State (May, 1932, to February, 1939), are to control if the language of Article XIV, Section 14(g), be unequivocal and unambiguous, nevertheless it is worthwhile to learn what was the intended purpose of the constitutional amendment. The Legislature reflected the intent of the drafters, as gathered by it in committee hearings and in open discussion in the House and Senate.

The amendment was enacted in 1934. That was not only in the period of the depression, but at the time of its early first shock. Taxes were a burden and difficult to collect. The Legislature had,

through successive measures, postponed the payment of taxes. Lands in great areas were being adjudicated to the State for taxes. The payment of bonds in principal and interest by the various political subdivisions of the State was practically impossible, especially in Louisiana. In order to ease the burden of this indebtedness, communities throughout the whole country were extending the time for the payment of such indebtedness by means of refunding operations. At that time Article 14, Section 14(g), authorized the issuance of refunding bonds but only "when authorized by a vote of a majority, in number and amount, of the qualified property taxpayers thereof * * *." The purpose of the amendment was to simplify the procedure necessary for the issuance of refunding bonds. The object sought to be obtained was the lessening of the burden cast upon Louisiana communities by the necessity of paying off bonds as they matured. That this is so clearly appears from the requirement of the Act that the maturities be so fixed as to effect a consequent reduction in the amount of the annual taxes pledged. There was no intention on the part of the Legislature or on the part of the people to amend the provisions of Act 46 of 1921, Ex.Sess., so as to require that all bonds be callable. The purpose was to extend the period within which the debt must be paid.

■ The amendment to Article 14, Section 14(g), of the Constitution cannot be construed as requiring that all bonds issued under Act 46 of 1921, Ex.Sess., after the adoption of the amendment are callable for payment prior to maturity. (a) Such a construction is an attempt to read the provisions of one act into another, which courts are always reluctant to do. (b) Such a construction is not within the usual meaning of the language of the amendment. (c) The proposed construction is strained. (d) Such a construction is outside the scope and purpose of the amendment. This purpose was to relieve political subdivisions of their debt burdens by extending the time for payment, not by accelerating it.

We should analyze our ruling to see if it be susceptible of reasonable interpretation and to determine if it bring about a practical situation. We believe the words "re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds [issued hereunder]" indicate by their very definitions, by their contextual meaning, and by the physical arrangement of the section of the Article, that the original bond contract in essence is not to be altered; that the principal outstanding has to remain the same, as well as the rate of interest.

■ The contract herein evidenced by a bond includes (a) the promise to repay the principal of the bond on the date specified in the bond; and (b) a promise to pay interest at a specified rate on specified dates until the maturity of the bond. We conclude that when the agreement to pay interest is evidenced by coupons attached to the bond, such coupons are separate, negotiable instruments. Jones, Bonds and Bond Securities, Volume 2, Section 715, page 174; Thomson v. Lee County, 3 Wall. 327, 70 U.S. 327, 18 L.Ed. 177; Conger v. City of New Orleans, 32 La. Ann. 1250. The agreement on the part of the issuing community to pay interest and the right on the part of the bondholder to receive such interest until the maturity of the bond is a vital part of the contract. The obligation to pay such interest to the maturity of the bond cannot be impaired. Const. of La., Art. 4, § 15.

The above items of obligation form a part of the contract evidenced by the bonds unless (a) the law under which the bonds are issued provides that they must be callable for payment prior to maturity; or (b) unless the proceedings authorizing the bonds so provide; or (c) unless the bonds themselves so provide. Road District No. 1, Jefferson County v. Sellers, Attorney General, Tex.Sup., 180 S.W.2d 138; Cochran County v. Mann, 141 Tex. 398, 172 S.W.2d 689; Board of Commissioners of Clark County v. Woodbury, 8 Cir., 187 F. 412; School District No. 78, Linn County v. Miley, 114 Kan. 741, 220 P. 281; Sebern v. Cobb, 41 Idaho 386, 238 P. 1023; City of Memphis v. Savings Bank, 99 Tenn. 104, 42 S.W. 16; State ex rel. Enright v. Kansas City, 110 Kan. 603, 204 P. 690; State ex rel. Board of Fund Commissioners v. Smith, 339 Mo. 204, 96 S.W.2d 348; City of Spartanburg v. Leonard, 180 S.C. 491, 186 S.E. 395; Catholic Order of Foresters v. State, 67 N.D. 228, 271 N.W. 670, 109 A.L.R. 988.

■ We subscribe to the theory advanced by the defendant that bond purchasers are bound to know the law of the

State. We do not agree with the defendant, however, that the law of the State is that there is power in the bond-issuing authority to refund these bonds at its discretion, or, to put it from a practical viewpoint, as in this case, whenever the interest rate of the future becomes lower than the interest rate specifiedly written in the contract.

We are not ruling upon the point as to whether or not the amendment is permissive to the degree that the issuing authority may prescribe by specific mention for the calling of the bond issue at any anniversary. But if the amendment be so permissive, we do say that the language of the bond would have to so state and the resolution of authorization likewise, etc.

This stipulation, in our opinion, not only to be honest, but likewise to have practical results in the sale of bonds, must be specified in the bond. When this condition is not specified in the bond and its accompanying coupon, the contract stands as it reads and the bond is not callable.

There may be a temporary benefit to the political subdivisions of the state to come from a contrary ruling, permitting this partial repudiation of their obligations, but all future sales of bonds would be damagingly affected, because all future bonds would travel with this handicapping, unexpressed condition.

We believe that the meaning of Article XIV, § 14(g), is that an issue of bonds when in actual default, or imminently so, *by mutual agreement,* even though in the case when the right of refunding has not been stated in the bond, may be refunded. That was actually the reason why the amendment was born. That was the situation existing in 1934, the year of its birth. The holders of defaulted bonds wanted fresh paper. The practical status was that the refunding bonds could find no sale for cash and all of the refunding at that time brought about an exchange of old bonds for new bonds. The bondholder was benefited in that he had henceforth in his possession undefaulted bonds. Ozenne et al. v. Board of Com'rs of St. Landry and St. Martin Gravity Drainage Dist. No. 1 of Parishes of St. Landry and St. Martin, 183 La. 465, 164 So. 247.

At this late date, ten years thereafter, for us to conclude that the language of Article XIV, Section 14(g), is so un-

equivocal that the defendant Board can do what it seeks now to do, does injury to our conscience. It is far better in the long run for the State that such an act by the defendant Board be enjoined. We are not attacking the honesty of the personnel of the Board. It is good that the courts should pass upon this case.

It is assumed that our various parishes, cities, and other bond-issuing subdivisions exclusive of the State, the Parish of Orleans and the City of New Orleans, have outstanding bonds totaling in principal amount more than $100,000,000. Verily, the issue here is substantial and not a mere trifle. Is it reasonable to infer that a future condition so meaningful in value would travel by implication with a bond obligation?

Since the position of the defendant savors of the partial repudiation of its bonded obligation, the very definite and unvarying upholding by our executives, administrators, and finally, by our courts, of the provisions of prescription on attacks for invalidity, found in our various laws authorizing bonds, enters the general picture. For, to hold with defendant would undermine seriously the earned reputation of Louisiana bonds in the commercial world as to their incontestability after the period of repose has lapsed.

Referring to the examples, we have Miller v. Town of Bernice, 186 La. 742, 173 So. 192, as to municipal revenue bonds under Act 80 of 1921, Ex.Sess.; Lapeyronnie v. Police Jury of Parish of Jefferson, 192 La. 775, 189 So. 132, as to parish refunding bonds under Article 14, Section 14(g), Act 85 of 1934; see, also, the cases of McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841; Sammons v. City of Lafayette, 191 La. 444, 185 So. 463.

The only case in Louisiana wherein Article XIV, Section 14(g), as amended (see Act No. 85 of 1934) was, in some of its phases, interpreted, is the Ozenne case, supra. That case is not definitive of what we have now to decide.

Important points were definitely decided, however, to-wit: (a) That no vote by the taxpayers was required to refund, (b) that the refunding bonds were not void by reason of claimed excess of amount over ten per cent of assessed valuation of real property in the district, (c) that the district had authority to extend the maturity of

the refunding bonds over a period not exceeding forty years from the date thereof, notwithstanding the implied limitation under the earlier constitutional provision of time for extending the maturity of the original bonds, and (d) several other less important points. The facts of this case disclose, quite importantly, too, that the refunding bonds carried interest at four per cent, while the original bonds were some at six per cent and some at five per cent, and that the principal of the refunding bonds was in a lesser amount than the principal of the original bonds that were being refunded. It is clear from the facts that the refunding bonds were not to be sold as an anticipated and settled fact, but that, *by agreement,* the owners of the old bonds were to take the new bonds in exchange. Every act of the Board of Commissioners of this drainage district that was attacked was declared valid. The reduction of the rate of interest was not put at issue.

The most noteworthy utterance in this case, to which the defendant points with hope, is found at page 252, 164 So., as follows:

"The seventh objection is:

" 'That the resolutions authorizing the issuance of said refunding bonds provide that any or all of such bonds may be exchanged for a like or greater principal amount of the original bonds, and that these resolutions violate said Constitutional Amendment (Act No. 85 of 1934), which provides that any holder of any outstanding bond sought to be refunded may, upon surrender of such bond, receive in exchange and substitution therefor a refunding bond of the same amount.'

"There is nothing objectionable about this provision of the resolution adopted by the board, nor is it inconsistent or contrary to the provisions of the Constitution. The resolution permits the board to exchange any or all the refunding bonds for a like amount, meaning the same amount, of the original bonds, or a greater amount of them in principal if it can. Under the Constitution the holders of the original bonds are entitled to receive, and may demand, upon surrender of them new or refunding bonds of the same amount in principal or they need not surrender them at all if they prefer to keep them. But if they are willing to surrender them in exchange for the new or refunding bonds and willing to accept for them refund-

ing bonds less in principal amount than the amount of the bonds which they hold, the board is not prohibited by the Constitution from taking advantage of an opportunity of exchanging its refunding bonds for a greater amount in principal of its old bonds. It would be to the advantage of the taxpayers for the board to do so, and, if it did, the taxpayers would have no right to complain."

We believe this language is pregnant with the thought that the holder of the old issue of bonds may compel specific performance of the original bond contract. There may be no obligatory refund except that the original principal and rate of interest be maintained.

█ The Title and Sections 1, 11, 25 and 39 of Act No. 46 of 1921, as amended by Act No. 287 of 1926, authorize the issuance of "negotiable bonds"; the same rules of law governing negotiable instruments apply. State ex rel. Louisiana Savings Bank & Trust Company v. Board of Supervisors of L.S.U. and A.&M. College, 202 La. 176, 11 So.2d 521. The school board could not issue nonnegotiable bonds if it wanted to. Bruce v. Catahoula Parish School Board, 174 La. 451, 141 So. 25; Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591.

We are directed in defendant's brief to the cases of German Savings Bank v. Franklin County, 128 U.S. 526, 538, 9 S.Ct. 159, 32 L.Ed. 519; Anthony v. Jasper County, 101 U.S. 693, 25 L.Ed. 1005; Northern Bank of Toledo v. Trustees of Porter Township, 110 U.S. 608, 4 S.Ct. 254, 28 L.Ed. 258. We do not give much applicability of these cases to our instant question, because in all of them the shortcoming was a fundamental one to the effect that the issuing authority was without any power to issue the bonds at all. We do not have that handicap here.

The next cases cited by the defendant have more applicability: National Bank of Republic of New York v. St. Joseph, C.C., 31 F. 216; Neighbors of Woodcraft v. Rupert, 51 Idaho 215, 4 P.2d 360; State ex rel. Town of El Dorado v. Williamson, 177 Okl. 526, 60 P.2d 1032. In these three cases the authority was statutory, not constitutional as in the instant case, and the provision of call was a part of the statute. You could not use the statute as authority for the issuance of the bonds without making the right to call the bonds a part of it. In the instant case, as we have

attempted to show already, the source of power is in the Constitution, and we have shown that Article XIV, § 14(g) need not necessarily be used when Article XIV, § 14(a) is used, and if (g) be intended to be used, in the sense of calling the bonds at a lower rate of interest, then the specific condition of the issue being subject to call must be placed in the original bond contract.

By agreement, as in the Ozenne case, however, the bondholders may accept otherwise—a reduction of the principal, as well as of the rate of interest.

A number of Texas cases are given in like manner, by the defendant, to-wit: Cochran County v. Mann, Attorney General, et al., supra; Road District No. 1, Jefferson County v. Sellers, Attorney General, supra; Bexar County v. Sellers, Attorney General, Tex.Sup., 178 S.W.2d 505. Similarly, in these Texas cases, we have the situation where an Article of the revised statutes of Texas is used as the authority to issue, and the Article may not be used unless there be the inseparable concurrent condition that the bonds are subject to call. The Article so reads; therefore, the bonds in those cases, even though silent on the matter of call, are subject to call by the issuing body at its pleasure.

Arizona is the only other state from which a case is given of this type of opinion. Maricopa County v. Osborn et al., 59 Ariz. 244, 125 P.2d 703. The other states of the Union do not furnish us with any case of an action as is contemplated here to be perpetrated by the State of Louisiana.

■ We agree that the refunding is not the creation of a new debt. Evidence of that is shown by the very basis for the recent amendment to Article XIV, § 14.

That basis is disclosed when the requisite of a second vote of the people was abolished, on the theory that since a new debt was not created, the original vote of the people creating the original debt was still valid. The second election for the refunding, since the refunding debt was not a new debt, was illogical. State ex rel. Porterie v. Board of Liquidation of State Debt, 190 La. 520, 182 So. 661. A fortiori, since the debt is not a new one, the rate of interest of the original contract may not be changed or reduced, as is sought in this instant case.

The experience of the state of Maine is illuminating. We append as a footnote what we find in the Judicial Highlights, page 15, "Supreme Court of Maine Questions Time Element in State's Power to Redeem Bonds," Opinion of the Justices, 139 Me. 416, 38 A.2d 564, found in 144 F.2d, Advance Sheet No. 6 for November 13, 1944.[1]

The Louisiana cases cited to us by defendant to the effect that the rate of interest may be changed are all cases without the purview of Article XIV, § 14, of the Constitution. They are cases affecting our levee boards, which exercise power under other parts of our Constitution. We disagree with the contention made by the defendant that constitutional powers to levee boards and to school boards are identical. They are fundamentally different in source and in content.

Summarizing, the laws of the state of Louisiana contain no provision directing that bonds issued by its political subdivisions should be payable before maturity. The terms of the bond itself do not so provide, the terms of the proceedings authorizing the bond do not so stipulate and, as we have shown, the statutes and the Constitution do not so enable.

---

[1] "The House of Representatives of Maine, under the State's Constitution, requested of the Supreme Court an opinion on whether a bill providing for the issuance of bonds to refund the state's outstanding obligations, some time before the maturity thereof, was constitutional.

"The bill that the House of Representatives had in mind was a bill providing for the issuance of state bonds at a lower rate of interest to redeem others bearing a higher rate of interest. In view of the present favorable interest rate, it was proposed in the bill to authorize the State Treasurer to issue such refunding bonds at once, to invest the proceeds of those bonds in government securities until such a time as the bonds to be redeemed matured.

"In its reply to the House of Representatives, the Supreme Court advised that the plan of the House to issue the bonds an unreasonable length of time before maturity of the indebtedness to be retired, for the avowed and unseparable purpose of establishing an interim investment fund for gain and profit, creates a new debt or liability and is in violation of the Maine Constitution.

"The Supreme Court of Maine is one of the few state Supreme Courts that renders advisory opinions in defined circumstances to other branches of the state government."

The instant bonds have all the characteristics of negotiable instruments; if anything, the obligations of bonds are the more solemnly expressed. The commercial world has profited greatly from the brevity of content, the strictness of application, and the immutability of obligation, of our bills, notes, and cheques. We should not depart here; it was not the intent of the state to do so; the Constitution and the statutes thereunder do not so provide.

We shall sign in due time a judgment in full support of the prayer of plaintiff.