## BERGSTEIN et al. v. LOWMAN FOLDING BOX CORPORATION et al.

### No. 251, Docket 20159.

Circuit Court of Appeals, Second Circuit.

July 12, 1946.

Allen & Allen, of Cincinnati, Ohio (Gibson Yungblut and Marston Allen, both of

Cincinnati, Ohio, and Theodore E. Simonton, of New York City, of counsel), for appellants.

Richard Russell Wolfe, of Chicago, Ill., and James A. Fowler, Jr., of New York City (Carlson, Pitzner, Hubbard & Wolfe, of Chicago, Ill., and Cahill, Gordon, Zachry & Reindel, of New York City, of counsel), for appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appeal is from a decree of the District Court for the Northern District of New York holding invalid for lack of invention claims 15, 18, 24 and 34 of United States Pat. No. 2,197,089 granted to Nels A. Anderson April 16, 1940, on his application filed July 19, 1938. The patent, as the specifications show, "relates to the manufacture of fibreboard boxes of the type which are furnished to the trade in flat or collapsed condition for convenience in shipment and storage; which collapsed boxes are erected to extend the walls as they are needed for use." The patent contains numerous method claims and machine claims but those in suit are all claims for the machine disclosed.

This machine was designed by Anderson to infold in a straight line operation an old type of collapsed box shown in United States patents Nos. 738,516 and 1,032,645 granted to Beers on September 8, 1903, and July 16, 1912, and long well known as the Beers' type box. Two such machines were built and operated by his employer. Neither have been sold and no others have been made. The plaintiffs, who claim title to the patents as trustees by assignment, explained their failure to exploit the patent by showing that they were box manufacturers and primarily interested in making boxes and not in building the machines to make them.

The defendant, Lowman Folding Box Corporation, is a manufacturer of collapsed boxes who used an accused machine which it purchased of the defendant, E. G. Staude Manufacturing Company, who has taken over and conducted the defense.

Invalidity both for lack of invention and for failure to disclaim, non-infringement, and insufficient title in the plaintiffs' patent to maintain the suit were the defenses relied on. The trial court dismissed the bill because no patentable invention was disclosed and for non-infringement, finding it unnecessary to pass upon the other defenses to the suit.

Collapsed boxes made of fibreboard, or of similar material, had long been the product of machines when Anderson designed his. He took those parts and principles from the art which he desired to use and contrived in an ingenious way the first straight line machine for making an infolded Beers' type box. They had formerly been made on what are known as angular machines so-called from the fact that at one point the progress of the blank through the machine is interrupted and its continued advance is in a direction at right angles to its previous path of motion. Such machines are speedy and satisfactory but take up more floor space in a factory than do straight line machines. Both kinds of machines take preformed and creased blanks at one end and bring them out folded in a collapsed condition and glued where needed. There are two ways of folding the sides, ends, and tabs on such boxes, known as infolding and outfolding. Outfolded boxes are the older kind and have two of their opposite walls extending outwardly from the main panel of the blank. They do not form as rigid a box when erected as do the infolded type in which all four of the walls are bent inwardly over the main panel.

Whether boxes of this type are folded inwardly or outwardly on machines, use is made of certain well known mechanical devices and from now on discussion will be mainly confined to the infolded type of Beers box made in a straight line operation. The blanks always have to be fed through the machine by some forwarding means and the generally accepted kinds are endless chains with either pins or lugs which come into contact with the blank, and friction devices like wheels or belts which press on the blank and hold it firmly to the machine while moving it along.

Both feeds were old in the art before Anderson who used both in sequence.

When the walls of a blank are folded inwardly in a straight line operation it is necessary, of course, to fold the front wall backwardly and the rear wall forwardly. To infold the front Anderson used the old method of bringing it up against an immovable member which turned it back over the panel as had been done in a prior art machine called the W. M. P. To infold the rear wall he used fingers pivoted at a properly placed station which came up rapidly to turn that wall forwardly as the blank moved on. This was also old as shown by Pat. No. 1,890,604 granted Von Thien November 13, 1934, and traveling fingers to do the same thing had been shown by Van Vleet and Hurd in Pat. No. 568,014 granted to them September 1, 1896.

Infolding such a box requires, however, more than this. There are triangular tabs at each end of these walls which have to be turned reversely and to which glue is later applied as the blank moves through the machine. The tabs on the front walls had been turned simultaneously with the folding of those walls on the W. M. P. machine by short twist rods which engaged the advancing tabs. Anderson not only turned the front walls and the tabs reversely and simultaneously but also turned their rear walls and their tabs reversely and simultaneously while the blank was moving in a straight line through the machine.

As the walls and tabs when folded have a tendency to spring back toward their former position they have to be held down after folding. This was done in the prior art by holding-down rods under which the folded parts passed. But to infold the trailing walls and tabs it was necessary to avoid using a hold down means which would interfere with the folding and yet there had to be something to hold the blank down sufficiently to make it fold where creased when the fingers came up at the rear against the wall. Anderson used the conventional timed feeding conveyor chain which picked the blanks off the supply stack by means of pins on the chain and carried them in timed relation to the working parts of the machine to the point where the trailing wall was folded and then he used friction wheels pressing upon parts of the blank not then being folded to take over the feeding while the folding was done. This left the wall free to be folded and held the blank down sufficiently. The feeding was later taken over by a timed conveyor chain with lug engagement of the rear wall that carried the blank through the machine while the remainder of the work was done upon it.

The contribution of Anderson now said to be invention was the change which made it possible to infold in a straight line operation the front and rear walls of a Beers' type box and to fold their tabs reversely without having the folding and holding down means employed at the front wall interfere with the folded rear wall and its tabs as the rear of the blank passed through the place in the machine where the front wall and tabs were folded. To do that Anderson changed the conventional rods a little by putting them just high enough above the blanks so that they would engage the tabs and turn them reversely while the walls were infolded and extended them throughout the section of the machine where the folding of both the rear and front walls occurred. Thus he brought about the desired folding and held the walls, through the pressure of the rods on their tabs, from springing back out of position to pass through the machine to be glued and pressed to complete the process. The trial judge found on ample evidence that this change in a crowded art required no more than the skill to be expected of a competent mechanic, and we agree. As he said, "Having determined the folds to be made, it is within the expected skill of a mechanic in this art to select any desired type of feeding, conveying, folding and gluing instrumentalities, and to arrange the selected ones in proper form and sequence to perform their respective and individual functions in moving the blank, making the folds and applying the glue in a predetermined order of operation." Changes in position and shape of parts like abutments, rods for folding and holding, moving fingers, conveyor chains, friction feeds and the like were common-

place in this art and evidence of invention must be weighed against this background. Where mechanical development is high accomplishment by way of change must be relatively high to amount to patentable invention. It must certainly rise above fairly obvious adaptation of the old in known ways before it becomes more 'than the skill of the calling to the benefit of which the public is freely entitled. Hansen v. Slick, 3 Cir., 230 F. 627; Dubilier Condenser & Radio Corporation v. Aerovox Wireless Corp., 2 Cir., 37 F.2d 657; Technidyne Corporation v. McPhilben-Keator, 2 Cir., 72 F.2d 242. While it is true that neither the W. M. P. machine or any other in the prior art would infold both the front and rear walls of a blank in a straight line operation and so no complete anticipation was shown, it is plain that only ordinary skill and the desire to make the changes were required to accomplish what Anderson did. It has made no impression upon the art worth the mention and there was no error in holding all the claims in suit invalid for want of the disclosure of any invention to support them.

Our conclusion as to this defense makes it unnecessary to discuss the other points raised.

Judgment affirmed.