HAWTHORNE, Justice.
 

 The appeals in both these cases are from judgments of the lower court granting unto plaintiffs, Edmond Martin, Jr., and Horace J. Parr, a perpetual injunction enjoining, prohibiting, and restraining defendants, the Mayor and the Board of Aldermen of the Town of Westwego, and each of them, from issuing and selling certain refunding bonds, and further enjoining the defendants, and each of them, from carrying out in any respect whatsoever the terms and provisions of resolutions adopted on October 25, 1945, which, among other things, provided for the issuance and sale of these refunding bonds.
 

 Defendants, the Mayor and the Board of Aldermen of the Town of Westwego, purporting to act under the provisions of Article XIV, Section 14, Subsection (g), of the Louisiana Constitution, adopted a resolution dated October 25, 1945, for the issuance and. sale of $223,000 refunding bonds, Series 1, dated January 1, 1946, maturing serially on September 1 of the years
 
 *223
 
 1947 to 1975, both inclusive, and bearing interest at a rate to be designated in the ■accepted bid for the purchase of the bonds not to exceed 3 per cent per annum, the interest to be paid semiannually on March 1 and September 1. The proceeds of the sale of these bonds were to be used exclusively for the purpose of paying the principal of certain outstanding bonds, being $62,000 refunding waterworks bonds bearing interest at the rate of 5 per cent per annum, and $161,000 refunding paving bonds bearing interest at the rate of 4% per .cent per annum.
 

 The judgment of the lower court in the case which bears No. 38267 on the docket of this court enjoined the issuance and sale ■of these refunding bonds - and also enjoined and restrained the defendants from carrying out the terms of the resolution in any respect whatsoever.
 

 On the same date, October 25, 1945, the defendants, purporting to act under the same provisions of the Constitution, adopted a resolution for the issuance and sale of $27,500 refunding bonds, Series 2, dated January 1, 1946, maturing serially on September 1 of the years 1946 to 1958, both inclusive, and bearing interest at a rate to be designated in the accepted bid for the purchase of the bonds not to exceed 3 per cent per annum. The proceeds of the sale of these bonds were to be used exclusively for the purpose of paying the principal of certain outstanding bonds, being $27,500 public improvement bonds bearing interest at the rate of 5 per cent per annum.
 

 In the case which bears No. 38268 on the docket of this court, the lower court also rendered judgment enjoining the issuance and sale of these refunding bonds and enjoining and restraining the defendants from carrying out the terms of the resolution in any respect whatsoever.
 

 Payment of principal and interest of the bonds to be refunded is secured by a special tax levied annually, and payment of principal and interest of the refunding bonds, if issued and sold, will also be so secured.
 

 The parties in both of these cases are the same, and the issues are identical. For brevity we shall hereafter treat them as one case and refer to the outstanding bonds which the Town of Westwego, through its constituted authorities, is seeking to readjust, unify, and refund as the “present or outstanding bonds”, and refer to the bonds which the authorities seek to issue under the resolutions of October 25, 1945, as the “refunding bonds”.
 

 Neither the present bonds which the authorities of the town now seek to refund nor the proceedings under which they were issued contain a specific provision that they shall be callable for payment and redemption before their respective maturity dates. All of these outstanding bonds are made payable to bearer and are interest-bearing coupon bonds issued under the provisions of Article XIV, Section 14, Subsection (g),
 
 *224
 
 of the Constitution, and have the qualities of negotiable paper under the Law Merchant. Some of these bonds bear interest at the rate of 4% per cent per annum, and the others at 5 per cent per annum.
 

 In the resolution providing for the issuance of the refunding bonds it was stated that the purpose of the refunding operations was to readjust and refund outstanding bonds into an issue of refunding bonds bearing a lower’rate of interest and thereby effect a substantial reduction ‘in the annual taxes.
 

 The resolution of October 25, 1945, authorizing the issuance of these refunding bonds further provided that the present or outstanding bonds were called for payment on January 2, 1946, after which date they should bear no interest, provided that, in the event that funds were not available to pay them in principal and interest on that date, they should bear interest to the date on which such funds should become available, and that the principal of the outstanding bonds was to be paid from the proceeds of the sale of the refunding bonds, and that these proceeds were to be applied exclusively for that purpose.
 

 Pursuant to the resolution, the refunding bonds were advertised on November 4, 11, and 18, 1945, for sale on sealed bids to be received on November 27, 1945. However, according to an agreed statement of fact which we find in the record, the May- or and the Board of Aldermen did not proceed with the sale of the bonds as advertised because of impending litigation, but it was their intention to sell the bonds and issue them in conformity with said resolution if they were not restrained from doing so.
 

 The municipal authorities, also pursuant to the resolution, called the present or outstanding bonds for payment as of January 2, 1946, by advertisement on November 4, 11, and 18, 1945.
 

 Acting under authority of Act No. 285 of 1944, the State Bond and Tax Board on November 19, 1945, denied the application of the Town of Westwego for authority to issue and sell the refunding bonds, giving as its reasons therefor that “In view of Judge Porterie’s opinion, and the decision rendered by the United States District Court for the Western District of Louisiana (Kansas City Life Insurance Co. v. Evangeline Parish School Board [infra]) * * * in a suit involving the identical question, and in view of a memorandum from the Office of the Attorney General of the State of Louisiana * * * it is the opinion of this Board that, since no callable provision is contained in either the outstanding Bonds or in the proceedings under which these Bonds were issued, the plan of redeeming such obligations prior to their maturity is not legally authorized and enforceable”.
 

 Plaintiffs in their petition seeking the injunction allege themselves to be owners of real property in, and taxpayers of, the Town of Westwego, and it is admitted in
 
 *225
 
 the agreed statement of fact that they have a legal right as such to institute this suit.
 

 The issue before us for decision in this case arises out of the conceded fact that neither the present bonds nor the proceedings for their issuance contain a specific provision that they shall be callable for payment and redemption before their respective maturity dates.
 

 Plaintiffs contend that all of the proceedings leading to the issuance of the refunding bonds are illegal; that, under the provisions of Article XIV, Section 14, Subsection (g), of the Constitution, the defendants herein are not authorized to issue the refunding bonds for the purpose of effecting a reduction in the interest rate by accelerating the maturity of the outstanding bonds, and that under these provisions of the Constitution defendants are not authorized to call the outstanding bonds of the town for payment before their stated maturity.
 

 Plaintiffs’ contentions are based on the fact that the resolution authorizing the issuance of the refunding bonds called the outstanding or present bonds for payment or redemption on January 2, 1946, and provided that they should not bear interest after that date. This provision, according to plaintiffs, impairs the contract of the holders of the outstanding bonds and is unconstitutional, null, and void. They contend that the resolution deprives the holders or owners of the outstanding bonds of their right to hold them and to collect interest thereon according to their tenor, and by doing so deprives the holders of their property without due process of law, in contravention of the Fourteenth Amendment of the Constitution of the United States and Section 2 of Article I of the Constitution of Louisiana.
 

 Defendants, on the other hand, contend that, under the express provisions of Article XIV, Section 14, Subsection (g), they are empowered and authorized to issue and sell refunding bonds and to use the proceeds of the sale thereof exclusively in paying the principal of the bonds to be refunded for the purpose of readjusting, refunding, extending, or unifying the whole or any part of the town’s outstanding bonds only in order to effect a reduction in the rate of interest, in the total amount of principal and interest to be paid, and in the special taxes required to be levied to pay principal and interest; that the resolution issuing the refunding bonds may legally provide for the acceleration of the maturity of the indebtedness to be refunded; that the present or outstanding bonds are subject to be refunded and are callable for payment before their respective maturity dates.
 

 The trial judge in his written reasons for judgment stated that in his opinion the decision in the case of Kansas City Life Ins. Co. v. Evangeline Parish School Board, 58 F.Supp. 39, 43, rendered by the United States District Court for the Western District of Louisiana, covered each and every
 
 *226
 
 point in the instant case, and based his decision on the reasoning in that case and quoted at length therefrom. We fully agree with the statement of the trial judge, and fully approve the reasoning given by the Federal court in the cited case.
 

 Judge Porterie, the author of the opinion in that case, set out at the beginning of the decision the following facts:
 

 “The Evangeline Parish School Board, as the governing authority of School District No. 1 of the Fifth Police Jury Ward of the Parish of Evangeline, State of Louisiana, on February 18, 1937, issued $55,000 in principal amount of its bonds, dated January 1, 1937, each in the denomination of $500, bearing interest at 5%, the bonds maturing serially January 1, 1938, to January 1, 1962, and the interest payable annually. Bonds Nos. 1 to 15, which matured from January 1, 1938, to January 1, 1944, and all interest coupons maturing during the same period, were paid in due ■course at maturity and according to their tenor, leaving bonds Nos. 16 to 110, inclusive, of the principal amount of $47,500, and all of the unpaid interest coupons thereto attached, outstanding.
 

 “On June 20, 1944, the school board adopted its resolution providing for the refunding of said bonds, and for the issuance of $47,500 of principal amount of refunding bonds, each of the denomination of $500, bearing 3% per annum interest represented 'by coupons, payable semi-annually, the same principal amount as in the original issue falling due in the same years as provided for the maturities of the bonds to be refunded, and providing, further, in Section 12 of the resolution of June 20, 1944, for the sale of the refunding bonds, and ¡call and redemption of the outstanding bonds, with payment of their principal and interest only to date fixed for redemption.”
 

 The Kansas City Life Insurance Company, the owner and holder in due course of all the bonds which the school board proposed
 
 io
 
 refund, instituted a suit for a declaratory judgment and an injunction to prevent such calling for redemption of the bonds and interest coupons in advance of their maturity, ¡contending that the action of the school board was in violation of the contract and the due process clauses of both the Louisiana and the United States Constitutions.
 

 The United States district court rendered judgment declaring the proposed refunding bonds unauthorized and restraining the school board from calling its outstanding bonds and coupons for redemption in advance of their maturities.
 

 We now proceed to quote from that opinion at length.
 

 “These bonds held by the plaintiff were issued in 1937 and at the time of the issuance Article XIV, Section 14(g), as amended in 1934, was then and is now the organic law of the State of Louisiana. This constitutional provision authorized the refunding of the bonds issued and the sale
 
 *227
 
 thereof at any interest rate not exceeding six (6%) per centum per annum and the application of the proceeds therefrom to the payment of the bonds issued.
 
 Any
 
 holder of the bonds so issued, whether the original purchasers or holder in due course, was confronted with the constitutional and statutory authority under which they were issued, and that the bonds were subject to refund by the issuing authority. Just what is the nature of this refund, and under what conditions may it be exercised are the questions to be answered in this case. The resolution of February 18, 1937, set it out in the proceedings and in the bond form that such bonds were issued under and by virtue of the authority conferred by Article XIV, Section 14, of the Constitution of the State of Louisiana, as amended, and this in itself, it is contended, was notice to the holder that the bonds were subject to call and redemption by the issuing body.
 

 sje * * * * *
 

 “The amendment was enacted in 1934. That was not only in the period of the depression, but at the time of its early first shock. Taxes were a burden and difficult to collect. The Legislature had, through successive measures, postponed the payment of taxes. Lands in great areas were being adjudicated to the State for taxes. The payment of bonds in principal and interest by the various political subdivisions of the State was practically impossible, especially in Louisiana. In order to ease the burden of this indebtedness, communities throughout the whole country were extending the time for the payment of such indebtedness by means of refunding operations. At that time Article 14, Section 14(g), authorized the issuance of refunding bonds but only ‘when authorized by a vote of a majority, in number and amount, of the qualified property taxpayers thereof * * *.’ The purpose of the amendment was to simplify the procedure necessary for the issuance of refunding bonds. The object sought to be obtained was the lessening of the burden cast upon Louisiana communities by the necessity of paying off bonds as they matured. That this is so clearly appears from the requirement of the Act that the maturities be so fixed as to effect a consequent reduction in the amount of the annual taxes pledged. There was no intention
 
 on
 
 the part of the Legislature or on the part of the people to amend the provisions of Act No. 46 of 1921, Ex.Sess., so as to require that all bonds be callable. The purpose was to extend the period within which the debt must be paid.
 

 ******
 

 “We should analyze our ruling to see if it be susceptible of reasonable interpretation and to determine if it bring about a practical situation. We believe the words ‘re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds [issued hereunder]’ indicate by their very definitions, by their con
 
 *228
 
 textual meaning, and by the physical arrangement of the section of the Article, that the original bond contract in essence is not to be altered; that the principal outstanding has to remain the same, as well as the rate of interest.
 

 “The contract herein evidenced by a bpnd includes (a) the promise to repay the principal of the bond on the date specified in the bond; and (b) a promise to pay interest at a specified rate on specified dates until the maturity of the bond. We conclude that when the agreement to pay interest is evidenced by coupons attached to the bond, such coupons are separate, negotiable instruments. Jones, Bonds and Bond Securities, Volume 2, Section 715, page 174; Thomson v. Lee County, 3 Wall. 327, 70 U.S. 327, 18 L.Ed. 177; Conger v. City of New Orleans, 32 La.Ann. 1250. The agreement on the part of the issuing community to pay interest and the right on the part of the bondholder to receive such interest until the maturity of the bond is a vital part of the contract. The obligation to pay such interest to the maturity of the bond cannot be impaired. Const, of La., Art. 4, § 15.
 

 “The above items of obligation form a part of the contract evidenced by the bonds unless (a) the law under which the bonds are issued provides that they must be callable for payment prior to maturity; or (b) unless the proceedings authorizing the bonds so provide; or (c) unless the bonds themselves so provide. Road District No. 1, Jefferson County v. Sellers, Attorney General, 142 Tex. 528, 180 S.W.2d 138; Cochran County v. Mann, 141 Tex. 398, 172 S.W.2d 689; Board of Commissioners of Clark County v. Woodbury, 8 Cir., 187 F. 412; School District No. 78, Linn County v. Miley, 114 Kan. 741, 220 P. 281; Sebera v. Cobb, 41 Idaho 386, 238 P. 1023; City of Memphis v. Savings Bank, 99 Tenn. 104, 42 S.W. 16; State ex rel. Enright v. Kansas City, 110 Kan. 603, 204 P. 690; State ex rel. Board of Fund Commissioners v. Smith, 339 Mo. 204, 96 S.W.2d 348; City of Spartanburg v. Leonard, 180 S.C. 491, 186 S.E. 395; Catholic Order of Foresters v. State, 67 N.D. 228, 271 N.W. 670, 109 A.L.R. 988.
 

 “We subscribe to the theory advanced by the defendant that bond purchasers are bound to know the law of the State. We do not agree with the defendant, however, that the law of the State is that there is power in the bond-issuing authority to refund these bonds at its discretion, or, to put it from a practical viewpoint, as in this case, whenever the interest rate of the future becomes lower than the interest rate specifically written in the contract.
 

 * * * * * *
 

 “We believe that the meaning of Article XIV, § 14(g), is that an issue of bonds when in actual default, or imminently so, by mutual agreement, even though in the case when the right of refunding has not been stated in the bond, may be refunded. That was actually the reason why the amendment was born. That was the sitúa
 
 *229
 
 tion existing in 1934, the year of its birth. The holders of defaulted bonds wanted fresh paper. The practical status was that the refunding bonds could find no sale for cash and all of the refunding at that time brought about an exchange of old bonds for new bonds. The bondholder was benefited in that he had henceforth in his possession undefaulted bonds. Ozenne et al. v. Board of Com’rs of St. Landry and St. Martin Gravity Drainage Dist. No. 1 of Parishes of St. Landry and St. Martin, 183 La. 465, 164 So. 247.
 

 j}í í};
 
 %
 
 jfc
 

 “Summarizing, the laws of the state of Louisiana contain no provision directing that bonds issued by its political subdivisions should be payable before maturity. The terms of the bond itself do not so provide, the terms of the proceedings authorizing the bond do not so stipulate and, as we have shown, the statutes and the Constitution do not so enable.
 

 “The instant bonds have all the characteristics of negotiable instruments; if anything, the obligations of bonds are the more solemnly expressed. The commercial world has profited greatly from the brevity of content, the strictness of application, and the immutability of obligation, of our bills, notes, and cheques. We should not depart here; it was not the intent of the state to do so; the Constitution and the statutes thereunder do not so provide.”
 

 The Unitvd States Circuit Court of Appeals for the Fifth Circuit, in affirming the judgment of the lower court in the Evangeline Parish School Board case, reported 153 F.2d 611, 612, said:
 

 “We agree with the court below that the existence of a constitutional or statutory right to refund bonds does not necessarily imply the right to call them for payment if they are not due. The bonds here sought to be refunded were issued in compliance with the provisions of said act of 1921. They contain a solemn covenant to pay a fixed rate of interest for a definite term. The detachable coupons bear no notice of future defeasance through prior redemptions.
 

 “Subsection (g) of said section 14 of the state Constitution is not subject to the interpretation here sought to be placed upon it. The mischief to be remedied and the object to be attained by the amendment of 1934 were the elimination of the necessity for an election and the simplification of procedure for the issuance of refunding bonds. It permits refunding only where the bonds to be refunded are available for cancellation either because of their voluntary surrender or by reason of their having become due.
 

 “It was known when the act and constitutional amendment were adopted that bonds which are callable for redemption before maturity do not command a price as high as do bonds that are not callable. No optional provision for earlier maturities was inserted in the bonds in question, and the district in its sale of the bonds is presumed to have been benefited accordingly. To force the surrender of such bonds before maturity
 
 *230
 
 with payment of interest only to date of surrender, or to compel them to be exchanged for refunding bonds bearing a lower rate of interest, would impair the contractual obligations of the appellant in violation of the appropriate provisions of both the state and federal constitutions Const, of La. Art. 4, Sec. 15; Art. 1, Sec. 10, cl. 1, Const, of U.S. The state statutes and state constitutional provision authorizing the issuance of the bonds in question admit of no such interpretation.”
 

 The portions of the opinions hereinabove quoted answer every pertinent contention of defendants-appellants in the instant case, and it would serve no useful purpose for us to discuss them.
 

 For the reasons assigned, the judgments appealed from are affirmed; costs to be paid by defendants-appellants, Mayor and Board of Aldermen of the Town of Westwego, insofar as allowed by law.