126

**ERNEST M. LOEB CO., Inc., v. AVOY-
ELLES DRAINAGE DIST. NO. 8 OF
AVOYELLES PARISH, LA. (FEIBLE-
MAN, Intervenor).**

**Civ. A. No. 220.**

United States District Court
W. D. Louisiana, Alexandria
Division.

July 27, 1950.

Archie M. Suthon, New Orleans, La.,
for plaintiff.

Wade E. Couvillon and S. Allen Borde-
lon, Marksville, La., for defendant.

Charles A. Riddle, Jr., District Attorney,
Avoyelles Parish, Marksville, La., ex offi-
cio, for defendant.

Bernard Titche, Jr., New Orleans, La.,
for intervenor.

PORTERIE, District Judge.

On December 29, 1939, The Ernest M. Loeb Co., Inc., the plaintiff herein, filed a civil action against the Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, defendant, alleging that plaintiff is the owner of some sixteen (16) bonds issued by the defendant, each in the principal sum of five hundred ($500.00) dollars, which were past due and unpaid at the time the suit was filed. Of these bonds declared upon by plaintiff, three matured June 1, 1929; three, June 1, 1930; two, June 1, 1931; three, June 1, 1936; one, June 1, 1937; and, four, June 1, 1939. Plaintiff also declared upon seven (7) other bonds of the same series, and also of the principal amount of five hundred ($500.00) dollars each, which were not yet matured when this suit was filed but which it alleged would mature June 1, 1940.

The petition fully describes these bonds and, in addition to giving the facts already stated, shows that the twenty-three (23) bonds owned by plaintiff company were all of the same series, which comprised one hundred and fifty (150) bonds, each in the principal sum of five hundred ($500.00) dollars, dated June 1, 1919, and of like tenor and effect except as to maturity and serial number. Paragraph II of plaintiff's petition gives the form and wording of the bonds of this series, which show that they were issued by the defendant for the purpose of constructing canals and ditches and such other things pertaining to or necessary for the proper and efficient drainage of the land of the defendant drainage district, as authorized by law, and also for the government of said district. The recitals of the bonds of this series further show that they were issued in compliance with the constitution and laws of the State of Louisiana, and especially Article 281 of the Constitution of Louisiana (Constitution of 1913), Acts 256 and 317 of the General Assembly of the State of Louisiana of the year 1910, as subsequently amended, and certain ordinances of the Board of Commissioners of the Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, specifically referred to by date.

Plaintiff also alleges that it is the owner of certain past due interest coupons, each in the sum of twenty-five ($25.00) dollars. This series of bonds bore interest at the rate of five (5%) per cent per annum from date, payable annually on the 1st of June of each year, during which the interest on the particular bond would run.

On the trial on the merits, had on March 14, 1950, plaintiff was admitted to be the owner for value of the bonds sued on and of forty-three (43) coupons of the face value of twenty-five ($25.00) dollars each. Thus, plaintiff sued for $11,500.00, total principal of its twenty-three (23) bonds, with legal interest at the rate of five (5%) per cent per annum on each of these bonds from their respective due dates until paid; and also by the effect of the admission referred to, for $1,075.00 total face value of coupons, with legal interest at the rate of five (5%) per cent per annum on each of the coupons from their respective due dates until paid.

It is also stipulated that on each of the bonds there should be a credit on the principal amount thereof in the sum of $215.27 paid as of June 15, 1945, in accordance with the judgment of this Court, dated October 19, 1944, in this cause. Deducting the credit from the sum of $500.00 there thus remains due on the principal of each bond $284.73. The principal still due on the twenty-three (23) bonds thus amounts to $6,548.79.

T. Jeff Feibleman, by his petition of intervention filed on January 13, 1941, upon order duly signed under date of January 11, 1941, sued on seventeen (17) bonds of the same series, each of the principal amount of $500.00, and various coupons attached to most of them; and adopted the same legal position as the plaintiff corporation. The description of the seventeen (17) bonds, given in Article II of the petition of intervention filed by Feibleman, shows that four (4) of them matured June 1, 1936; six (6) of them matured June 1, 1937; four (4) of them matured June 1, 1938; one (1) of them matured June 1, 1939; and two (2) of them matured June 1, 1940.

On the trial on the merits it was also stipulated that Feibleman is the holder and owner for value of the seventeen (17) bonds on which his intervention is based and of forty (40) coupons attached to various of his bonds.

His intervention thus prayed for a judgment against the defendant drainage district for $8,500.00, total principal value of his bonds with legal interest at five (5%) per cent per annum on each bond from its respective due date, and also for $1,000.00, total face value of his coupons, with legal interest thereon as prayed for in his intervention.

It was also stipulated that Feibleman has received payment on the principal of each of his bonds of $215.27 as of June 15, 1945, in accordance with the judgment of this Court, dated October 19, 1944, in this cause. There thus remains due him, by way of principal, the sum of $284.73 on each of seventeen (17) bonds, or a total for his bonds of $4,840.41. Both of these admissions about the payments on account of principal show that they were made by the defendant drainage district.

Plaintiff and intervenor have each prayed for a moneyed judgment against Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, each on bonds and coupons, with interest.

Plaintiff has further prayed that defendant be required to pay to plaintiff whatever money it had in its possession, custody or control from taxes dedicated as security for the payment of the bonds and interest coupons owned by plaintiff, up to the amount of the judgment plaintiff prayed for. Intervenor prayed that the defendant be required to pay such money as it might have on hand, or as might accrue to it by virtue of taxes collected on account of the tax dedicated as security for the payment of the bonds of the series of date June 1, 1919, to the holders of the bonds of that series.

Both plaintiff and intervenor prayed that defendant be required to account for all money collected from the taxes dedicated by law solely to the payment of the bonds

and interest coupons of the issue referred to.

Plaintiff further prayed as follows: "(4) That in the event that there are not sufficient funds available in the possession, control or custody of defendant or from the account from it hereinbefore required, defendant be required to extend the levy and collection of the taxes for the payment of the bonds and interest coupons, herein sued upon; that in the alternative, defendant be required to refund the said bonded indebtedness of the outstanding bonds of the said issue, as provided for under the constitution and statutes of Louisiana, in such cases made and provided."

Intervenor prayed similarly, although in somewhat different language.

Each of them demanded recovery of their costs and reasonable attorney's fees from defendant; and also prayed for further and for general relief.

The defendant filed what its attorneys called an "Exception of no cause of action", which was treated by this Court as a "Motion to dismiss because of failure to state a claim for which relief can be granted". On the trial of this exception diversity of citizenship was conceded. The Court overruled the exception and dismissed defendant's motion, for reasons set forth in the judgment signed on May 9, 1941.

Thereafter, on June 30, 1941, the defendant, Avoyelles Drainage District No. 8 of the Parish of Avoyelles, State of Louisiana, filed its answer.

The defendant drainage district, through its attorneys of record, entered into a stipulation with the attorney of record for T. Jeff Feibleman, admitting that the proper jurisdictional facts appear, that said intervenor is a proper party and is the holder and owner for value of the seventeen (17) bonds described in his petition, that said bonds are past due and unpaid and consequently in default; and further stipulating that the answer filed to plaintiff's petition shall be deemed, insofar as applicable, as filed with reference to the petition of intervention, and, expressly, the issue shall be regarded as having been joined on the peti-

tion of intervention. This stipulation was filed on September 8, 1941.

Thereafter, after various attempts at amicable settlement of the issues between them, and extensions of time granted by the Court in view of such attempts, the then parties to this suit; namely, (1) The Ernest M. Loeb Co., Inc., plaintiff, (2) T. Jeff Feibleman, intervenor adopting the position of plaintiff, and, (3) Avoyelles Drainage District No. 8 of the Parish of Avoyelles, Louisiana, defendant, filed on October 20, 1944, a joint motion of all parties for a partial distribution of funds. On this joint motion a partial distribution of the funds was ordered by the Court to be made by defendant, of the sum of $215.27 on account of the principal of each of the 72 outstanding bonds of the issue sued on, and the sum of $750.00 as attorneys' fees was ordered paid to W. E. Couvillon and S. Allen Bordelon, Esqs., attorneys for defendant, jointly. It was ordered that the remaining sum of $1,248.82 be retained by the defendant drainage district, subject to the further orders of the Court; that the cause remain on the docket without prejudice to any claim asserted herein, or any defense made, save that proper credit be given for the payments made by defendant. It was directed as a part of the order that thirty (30) days written notice be mailed by the defendant to each bondholder at his last known address allowing thirty (30) days to file any opposition and that if no opposition should be made, the defendant proceed to make the payments as ordered.

Within this time C. W. J. Neville filed a motion to dismiss this action and the proposed distribution of funds as contained in the order, claiming as holder of two bonds that he should be paid by preference because he had protected his rights by obtaining a judgment on them against the defendant on May 3, 1940, and also pleading the prescription of five (5) years from the dates of their maturity against the other outstanding bonds. He also filed and urged a mandamus for payment of his judgment. These pleadings by Neville were overruled and dismissed, and the distribution was carried out as referred to above.

Any question of prescription was thus overruled and is no longer an issue herein.

After the distribution, there remains unpaid on the principal of the seventy-two (72) outstanding bonds the sum of $284.73 as to each bond, or the sum of $20,500.56 on the seventy-two (72) bonds. In addition, certain coupons remain unpaid and, also, interest at the legal rate of five (5%) per cent per annum on all past due principal and on all unpaid coupons from respective dates of maturity to date of payment, as plaintiff and intervenor contend.

On December 31, 1940, the amount on hand in bank to the credit of the defendant drainage district was $17,161.75. Collections during the first six months of 1941 amounted to $89.13, making a total on hand as of June 30, 1941, of $17,250.88. Further collections during the last half of 1941, all of 1942, all of 1943, and 1944, up to June 16, 1944, added the sum of $247.94, bringing the total of funds on hand to $17,498.82

Out of this amount the partial distribution on account of principal was made as of June 15, 1945, and payments of certain amounts due them were made to John F. Hartmann, for an audit, and to P. Walter Plauche, for services as Secretary of the Board of the Avoyelles Drainage District No. 8, and payment was also made of a premium on a surety bond. All these payments were made under orders of the Court. The present balance on hand is $431.61, resulting from collections of the taxes levied for the purpose of paying the bond issue.

The plaintiffs apparently thought badly of the Board because they alleged that defendant did "persistently and consistently and in a flagrant and aggravated manner attempt to evade the payment of the obligations of the district," pointing to the fact that two suits had been filed against defendant drainage district. Neither the allegations of the suits nor the results of their filing are disclosed.

The prayer for an accounting seems to have been satisfied, no evidence having been offered to show any shortage of funds or fraudulent action on the part of the Board.

The evidence adduced by the defendant Board of documents from the Supervisor of Public Funds and its own books as shown by the photostatic copies of the Board's account book renders it clear that all the funds that came into the Board's hands have been properly accounted for. The Board, as evidenced by the contents of a report made by the Supervisor of Public Funds and forming part of its records, shows that there was an insufficiency of funds of defendant Board soon after organization due to those responsible for the organization. There was failure to take into consideration the expense of operation of the Board as well as the probable forfeiture of properties to the state for taxes. There was also the stock market crash of 1929, followed by the depression in the several years following the latter, resulting in quite a number of tracts of land in the District going to the state for unpaid taxes. Evidence shows the close figures of the District's assessment at the very start of the life of the District as well as the subsequent decreases each year, due mainly to the above causes. Indeed, at various times the Board considered refunding but for reasons unaccounted for in the earlier efforts, and for reasons of impossibility of locating all bonds outstanding or securing the consent and accord of all the bondholders in the later efforts, this refunding was never accomplished. Part of the failure was due to the plaintiffs themselves and their participation in each plan of distribution was an acknowledgment of their failure in the preceding ones. Much was alleged about the fraudulent actions of the District Board as well as its refusal to open the books to them.

They further allege that sufficient taxes were collected during ten years to pay the bonds of the District, implying that the Board appropriated these funds to their own benefit. Other like allegations are made in the succeeding articles of its petition and they ask that an accounting be ordered made of defendant. Not a scintilla of evidence was adduced on the trial to support these charges and we think that we may regard as conceded, by the lack of any further references to any fraudulent actions charged and to the accounting of the funds, that the first had no foundation and the other has been fully met by this Board. In fact, an accountant of their own choosing was appointed and a full examination of the books was made and with nothing revealed of a dishonest nature.

The evidence of the defendant absolutely discloses that all funds received was accounted for, and by the report of the Supervisor of Public Funds, there were no irregularities or misapplication of funds.

The default in the payment of the bonds was caused by the insufficiency of funds due to the decreased assessment and as noted by counsel's brief to causes beyond the control of the Board, although the Board strived hard to meet their bonds.

The main contentions of the defendant may be stated as follows: (1) that the taxes to support the bond issue were voted by the qualified electors and property holders of the drainage district for twenty-one (21) years and expired after 1940; (2) although the law permits such taxes to be levied for a period not to exceed forty (40) years, the election that authorized the bond issue controls the action of the Board and there is no authority for the Board to extend the tax for any additional period, and it cannot be compelled to do so; and, (3) that the provisions for refunding the indebtedness evidenced by the outstanding bonds of this issue are permissive and not mandatory.

Defendant says that now when the term of the bond issue has expired and when this suit was filed, the default grew much larger and extremely burdensome. To call upon the taxpayers who have been faithful in paying their taxes for the full twenty-one (21) years would not only be inequitable and unfair, but would violate the contract which was entered into by the Board and the taxpayers at the time of the election. If this Board were compelled to effect a refunding of the debt and thus saddle upon these taxpayers—those who have always paid the full tax voted for the full term—an additional tax equal to practically half of the original issue, then, indeed, there would be an example of bad faith by the state. It would impose an obliga-

tion on the taxpayer in favor of the bondholder that the latter was never vested with when they bought the bonds. The proceeding of the Board, under the authority of the taxpayers through an election, formed part of the term of indebtedness and is as much part of the bond as if written in it. The taxpayers are not responsible for what has happened to change the conditions, while, on the other hand, the bondholders were on notice in advance, of the limit both of the term of the bonds as well as the limits of the tax voted to pay the bonds and the bondholders may not demand more than they agreed to accept.

Plaintiff and intervenor contend that each of them is entitled to a judgment against defendant for the amounts due each of them respectively, with interest and costs.

Plaintiff and intervenor have each prayed for an accounting of monies collected by way of taxes already dedicated as security for the payment of the bonds of this series, and for payment out of such monies. This part of the relief sought by them has already been granted to the extent of the partial distribution made under orders of the Court, and so granted for the benefit of the entire class of holders of the remaining bonds of the series.

The third contention, as broadened by the treating of this litigation, is that, in the event that there are not sufficient funds available in the possession, control or custody of defendant, or from the accounting asked for, then defendant should be required to extend the levy and collection of the taxes for the payment (in full) of the outstanding bonds, or, as additionally expressed in intervenor's prayer, that defendant be ordered to levy similar taxes annually until said bonds are paid in full.

The fourth contention, conditioned as the third, and alternative to it, is that the defendant should be required to refund the bonded indebtedness of the outstanding bonds of the issue in question, as allegedly provided for under the constitution and statutes of Louisiana.

From the tenor and the conditions of the bonds aforedescribed, plaintiff and intervenor are each entitled to judgment herein for the balance remaining due each of them on the principal of the bonds owned respectively, with legal interest at five (5%) per cent per annum from the due dates of the various bonds until paid, and also for the total face value of the coupons held by each of them, with legal interest at five (5%) per cent per annum on the various coupons from their respective due dates until paid.

We find that the charge of bad faith and the insinuation of dishonesty made against the members and the secretary of the Board to be absolutely without foundation. The secretary received a small salary; he received but half of his salary by compromise during the last months. The relatively small balance on hand of $431.65 will be prorated by the Court to the unpaid bondholders.

The vote of the qualified property owners in the District cast at a special election held for the purpose, authorized the Board to issue the series of bonds of date June 1, 1919, consisting originally of 150 bonds in the principal sum of $500.00 each, or a total issue of $75,000.00, the last of said bonds maturing June 1, 1940. By the same special election the Board was authorized to impose a special tax or forced contribution of twenty (20¢) cents per acre on all of the lands within the District, commencing with the year 1920 and ending with the year 1940, for the payment of the interest coupons attached to the bonds and the retirement of principal of such bonds as might mature each year.

The plaintiff and intervenor contend that this Court should order and direct the Board of Commissioners of this Drainage District to impose a twenty (20¢) cents per acre tax for nineteen (19) years more, because the general enabling statute permits the "forced contribution or acreage tax" for a period not to exceed forty (40) years. The taxpayers voted the tax originally on their property for twenty-one (21) years only; this Court is without authority to direct the imposition of a further tax of nineteen (19) years. Where is the authority by vote of the people? Where is the legal au-

thority, even by and through the discretion of the Board? There is none to be found either in the Constitution or in the statutes. This third contention must be rejected.

The plaintiff and intervenor have furnished us with a list of cases wherein they argue is contained the above authority. We shall analyze them.

In the case of Kansas City Southern R. Co. v. Hendricks, 150 La. 134, 90 So. 545, the question was whether or not bonds issued by the municipal corporation of Cedar Grove, under amendment to the Constitution of 1898, Art. 281, by Act 197 of 1910, could exceed ten (10%) per cent of the assessed valuation of the property within the taxing district. The Court answered in the negative; it sustained the validity of the issue up to ten (10%) per cent. There was an ancillary issue on the point as to whether or not the taxing authorities could make the assessment before the bonds were sold; that is, the debt incurred. The answer there was also in the negative. We see nothing in this case to encourage the plaintiff and intervenor.

To the contrary, the cited case is strong on the point that nothing can be done by the taxing authorities beyond the strict provisions of the enabling taxing laws and beyond the actual authority granted by the property owners who are to pay the tax. The case, in our view, is strong on the point that Avoyelles Drainage District No. 8 has no authority to continue an acreage tax for nineteen (19) more years beyond the term of years specifically authorized by the voting taxpayers and in the face of which provision the present holders bought their bonds. We quote the following from the case at page 546 of 90 So.:

"The bonds exceed 10 per cent. of the assessment of that year by something over one-third. Defendants, however, urge that it is the excess only that should be declared null and void. In this respect they are supported by the jurisprudence to which they refer. In the case of Board of Commissioners v. Wilkins Co., 125 La. 127, 51 So. 91, it was said, quoting from Gray v. Bourgeois, 107 La. 671, 32 So. 42, that:

" 'We do not think that the authorization voted was null and void in its entirety from the mere fact that it attempted to convey a power greater than the taxpayers were competent to grant. The power granted should be held legal up to and within the amount of the special tax provided for as a means of paying the principal and interest of the debt to be contracted. Oubre v. Town of Donaldsonville, 33 La.Ann. [386], 390. The authorities of Morgan City are authorized to act under the authorization as conferred upon them by the property taxpayers at the said election to incur debt and issue bonds as voted for to that extent, but no further.'

"In those cases the tax authorized was not sufficient to retire the bonds in principal and interest. There is no difference in principle between them and the one at bar. In each the authority granted was exceeded. Those cases determine the question which is here under consideration; and therefore the bond issue voted will be declared null and void only to the extent that it exceeds 10 per cent. of the assessment for the year 1919."

In the case of Ascension Red Cypress Co. v. New River Drainage Dist., 175 La. 300, 143 So. 270, the situation was that the board had been authorized by the vote of the resident taxpayers in the district to levy a tax of five mills and then to issue bonds in the sum of $70,000.00. The Court said at page 272 of 143 So.: "It is very clear that the 5-mill tax was not voted for the sole purpose of paying the bonds and interest as they mature. That was one of the purposes, and under the law and the authority delegated by the taxpayers it is the paramount, mandatory duty of the board of commissioners to see that the bonds are paid."

The collection of five mills as authorized by the voting taxpayers not only provided ample funds to meet the bonds as they matured, as well as the accumulated interest thereon, but left a surplus sufficient to pay the debt sought to be collected by the plaintiff. It is declared in the case, at page 272 of 143 So., that this additional debt incurred by the district was " * * * to properly drain the property included within its limits

and the purpose of the tax which the tax-payers authorized at that election was to accomplish the end in view."

Let us quote again from the case:

"The debt which plaintiff now asks that defendant be compelled to pay was incurred in connection with the construction of a drainage canal. Plaintiff donated the right of way over its land for the canal with the stipulation that defendant should pay for the timber destroyed, which stipulation was acceded to by defendant. This being a debt incurred by the drainage district in the construction of the work undertaken, it must be paid, if the district has the means for doing so.

"It is alleged, and defendant concedes, that, if the full five-mill tax is levied and collected each year, the proceeds will be more than sufficient to pay the bonds as they mature and the interest. There would be a surplus left out of which plaintiff claims it should be paid.

"As defendant has been ordered by a judgment now final to pay plaintiff's debt, and as the taxpayers have provided the means by which the debt may be paid, it follows that defendant must do so."

This case is no help to the plaintiff and intervenor in the instant case because there is nothing sought to be done above and beyond the original authority granted by the voting taxpayers. The debt paid by the drainage district is one legally incurred and clearly within the original authority granted. In the instant case, the number of acres included in the tax area was known to the bond buyers; the limit of the acreage tax of twenty (20¢) cents was likewise known to the bond buyers and the number of years granted by the voting taxpayers for the yearly imposition of that tax on their property being twenty-one (21) years was likewise known to the bond buyers.

Where may the plaintiff and intervenor find the authority for the imposition of another 19 years of this tax? So, we must conclude that this case is not in the favor of plaintiff and intervenor.

We realize that they contend that the original bond issue in the instant case of $75,000.00 is fully and well authorized and

that this original amount of $75,000.00 was spent within the tax area for the benefit of the property therein and that in equity a further tax should be imposed to finish paying the originally incurred bonded debt.

There is no law, however, to grant the type of relief sought in this third contention. It is overruled and denied.

We now come to the last and fourth contention and that is: In the event that there are not sufficient funds available in possession, control or custody of defendant or from the accounting herein sought, and also if this Court should not require the defendant to extend the levy and collection of the taxes for the payment of the outstanding bonds and coupons of the series, then the defendant should be ordered to refund the indebtedness evidenced by such outstanding bonds and coupons, as provided for under the Constitution and statutes of Louisiana.

Since this is the crux of this litigation, we think we should quote at length Article 14, Section 14(g) of the Louisiana Constitution of 1921, as amended in 1934:

"For the purpose of re-adjusting, refunding, extending or unifying the whole or any part of its outstanding bonds and certificates of indebtedness, any political subdivision specified in Section 14(a) of this Article as amended, and any Parish School Board, *shall have full power and authority to issue* negotiable interest bearing refunding bonds in an amount not exceeding the amount of bonds and certificates of indebtedness to be refunded, and the interest due thereon. (Emphasis ours.)

"Such political subdivisions, through their governing authorities, and Parish School Boards, are authorized to and shall secure the payment of said refunding bonds, in interest and principal, by the levying of special ad valorem taxes annually in an amount sufficient to pay interest annually or semi-annually and to pay the principal falling due each year, as provided in Section 14(a) of this Article, when the bonds to be refunded were secured in like manner. Provided, drainage and subdrainage districts shall secure the payment of said refunding bonds by imposing and collecting

annually an acreage tax or forced contribution on each and every acre of land within such districts, sufficient in amount to pay interest and principal falling due each year, when the bonds to be refunded were secured in like manner. Provided further, that Parish School Boards, subject to the approval of the State Board of Education, shall secure the payment of refunding bonds issued under this Paragraph by anticipation and pledge of their annual revenues in an amount sufficient to pay interest and principal falling due each year.

"Refunding bonds issued hereunder shall be governed by the provisions of Section 14 (h) of this Article; provided that the maturities shall be so fixed as to effect a consequent reduction in the annual rate of taxes or annual forced contributions required, or annual revenues pledged.

"Upon the issuance of refunding bonds, as provided herein, by any political subdivision or Parish School Board, any holder of any outstanding bond or certificate of indebtedness of any such political subdivision or Parish School Board, whether matured or unmatured, may upon surrendering such bond or certificate of indebtedness to the issuing authority, receive in exchange and substitution therefor a refunding bond of the same amount, bearing interest not exceeding six (6%) per centum per annum, maturing not longer than forty (40) years from date of such refunding bonds. Provided, that all or any part of the refunding bonds issued under the provisions of this paragraph may in the discretion of the issuing authority, be sold at not less than par, after advertisement in such publication as the issuing authority may select, once a week for three weeks, and the funds realized from the sale thereof shall be applied exclusively to the payment of the bonds or certificates of indebtedness refunded.

"The limitations as to indebtedness and bonds issued based on the assessed valuation contained in Section 14(f) of this Article shall not apply to refunding bonds issued hereunder.

"The governing body of any such subdivision and the Parish School Boards shall have full power and authority to adopt all ordinances or resolutions necessary to carry the provisions of this paragraph into effect. No proceedings in respect to the issuance of any such refunding bonds shall be necessary, except such as are contemplated by this paragraph, which shall be self operative, and no further legislation shall be required to effect the same. Such refunding bonds issued hereunder shall be, and are, hereby declared to have the qualities of negotiable paper under the Law Merchant. If the validity of any refunding bonds issued under the provisions of this paragraph is not raised within thirty (30) days from date of publication of the issuing of said bonds, the authority to issue the said bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed and no court shall have authority to inquire into such matters."

The important feature of this amendment is that the governing authority of the drainage district is not required to submit the proposition to refund to a vote of the qualified electors of the drainage district. Before this amendment of the section of the Constitution by Act No. 85 of 1934, the proposition to refund had to be submitted to the resident property taxpayers of the drainage district.

We take the position that the words used in the section "full power and authority" meant to invest power and authority in the drainage district that it did not have before. There is no more the necessity of submitting the question of refunding to the voting taxpayers. The power and authority, however, is merely permissive and not mandatory. Why? Because the vote of the taxpayers is a gamble; it may be favorable or unfavorable. Similarly, the vote of the members of the board of drainage commissioners may be favorable or unfavorable.

It is only after the indebtedness is refunded, if the drainage commissioners have found it advisable, that the levy of the tax is mandatory. This language of the Section comes into play when the refunding is effected: "Such political subdivisions, through their governing authorities, and

Parish School Boards, are authorized to and shall secure the payment of said *refunding bonds,* in interest and principal, by the levying of special ad valorem taxes annually in an amount sufficient to pay interest annually or semi-annually and to pay the principal falling due each year, as provided in Section 14(a) of this Article, when the bonds to be refunded were secured in like manner. Provided, drainage and subdrainage districts shall secure the payment of said refunding bonds by imposing and collecting annually an acreage tax or forced contribution on each and every acre of land within such districts * * *." Sec. 14(g), La. Const. of 1921, as amended. (Emphasis ours.)

Paragraph 1 of the Section above quoted says that the governing authorities shall have power and authority to issue refunding bonds but does not direct or command them to exercise such power; but, if it is so exercised, the second paragraph of the Section says that the governing authorities "are authorized to *and shall*" secure the payment by imposing a tax. It would have been as easy to use the words "and shall" in the first paragraph as in the second when conferring the authority mentioned, but the Constitution did not denote that it was compulsory for the subdivision to use that power if it did not deem it advisable.

We again find support for our position in Article 14, Sec. 14(i), which reads as follows: "Should any subdivision neglect or fail for any reason to impose or collect sufficient taxes for the payment of the principal and interest of any bonded debt hereafter to be incurred under this Constitution, any person in interest shall have a cause of action enforceable in any court having jurisdiction of the subject matter to enforce the imposition and collection of such taxes."

It is clearly seen that in Sections 14(g) and 14(i) the mandatory provisions of "shall" refer to the imposition and collection of taxes *after* the refunding, but there are not such mandatory words or phrases used from which it may be said that the governing authorities *must issue* refunding bonds, nor are there any provisions in said Sections giving any person in interest

a cause of action enforceable in any Court having jurisdiction of the subject matter *to force the issuance of any refunding bonds* as there is to impose the tax after the refund takes place.

The word "authorize" is defined in Webster's Unabridged Dictionary as to be "to clothe with authority, warrant, or legal power; to give a right to act; to empower", and the word "power" is defined as "the agent's exercise and ability to act".

█ This Court is without authority in law to issue a writ of mandamus to compel the performance of a discretionary duty by a public board. It is only a ministerial duty that may thus be enforced by the Louisiana courts. See 13 La.Digest, Mandamus, II. Subjects and Purposes of Relief, (B) Acts and Proceedings of Public Officers and Boards and Municipalities, ☞ 63 to 72; See also, Garland's Revised Code of Practice of Louisiana, 4th Edition (Roehl), pp. 607 to 612.

█ Therefore, this fourth contention must be overruled and denied.

The plaintiff and intervenor have furnished us, also, with a list of cases wherein they argue is contained the authority for their fourth contention. We shall analyze them.

First, they try to make much of the case of Kansas City Life Ins. Co. v. Evangeline Parish School Board, D.C., 58 F.Supp. 39, wherein the judge in the instant case was the author of that opinion. We find that this case is strongly in support of the concept that the conditions that entered into the contract between the taxing authority and bond issuing authority on the one hand and the bond buyers on the other hand should be strictly followed. We refused, in that case, under the very same Article 14, Section 14(g) of the Louisiana Constitution, as amended in 1934, to refund (after approval by the members of the school board) the outstanding bond issue of a school district. Why? Because a certain tax had been understood; a certain bond issue had been fixed; and, *a certain rate of interest had been stipulated.* We held that the members of the school board were

without authority to make use of this law to refund the old bonds at the high rate of interest and replace them with new bonds at a lower rate of interest. There were vested rights involved. The decision was affirmed by the United States Court of Appeals for the Fifth Circuit in 156 F.2d 611. The decision was followed by the Louisiana Supreme Court in Martin v. Mayor & Board of Aldermen, 212 La. 439, 32 So.2d 711.

We are then referred to the case of United States, ex rel. Morris Ranger v. City of New Orleans, 98 U.S. 381, 25 L.Ed. 225. In the cited case you have the broad power of taxation, which has been delegated by the Legislature of Louisiana to the great municipal corporation of New Orleans; in the instant case, you have the restricted and meticulously detailed and strictly limited power and authority given by the Legislature of Louisiana, under a general enabling statute, to the several police juries of Louisiana to create drainage districts. In the cited case, the Court well says:

"The position that the power of taxation belongs exclusively to the legislative branch of the government, no one will controvert. Under our system it is lodged nowhere else. But it is a power that may be delegated by the Legislature to municipal corporations, which are merely instrumentalities of the State for the better administration of the government in matters of local concern. When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of those purposes, its authorities, however limited the corporation, must have the power to raise money and control its expenditure. In a city, even of small extent, they have to provide for the preservation of peace, good order and health, and the execution of small measures as conduce to the general good of its citizens; such as the opening and repairing of streets; the construction of sidewalks, sewers and drains; the introduction of water, and the establishment of a fire and police department. In a city like New Orleans, situated on a navigable stream, or on a harbor of a lake or sea, their powers are usually enlarged, so as to embrace the building of wharves and docks or levees for the benefit of commerce, and they may extend also to the construction of roads leading to it, or the contributing of aid towards their construction. The number and variety of works which may be authorized, having a general regard to the welfare of the city or of its people, are mere matters of legislative discretion. All of them require for their execution considerable expenditures of money. Their authorization without providing the means of such expenditures would be an idle and futile proceeding. Their authorization, therefore, implies and carries with it the power to adopt the ordinary means employed by such bodies to raise funds for their execution, unless such funds are otherwise provided. And the ordinary means in such cases is taxation. A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose.

"For the same reason, when authority to borrow money or incur an obligation in order to execute a public work is conferred upon a municipal corporation, the power to levy a tax for its payment or the discharge of the obligation accompanies it; and this, too, without any special mention that such power is granted. This arises from the fact that such corporations seldom possess—so seldom, indeed, as to be exceptional—any means to discharge their pecuniary obligations except by taxation. 'It is, therefore to be inferred,' as observed by this court in Citizens' Savings & Loan Ass'n of Cleveland v. City of Topeka, 20 Wall. 655, 660, 22 L.Ed. 455, 460, 'that when the Legislature of a State authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the Act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference.'"

The above language, we think, is all sufficient in showing that this case does not help the plaintiff and the intervenor for the origins of power and authorization in the two compared cases are so different. When the creditors of the city of New Orleans in the cited case did the work for

the city, it was in the face of their knowledge of the general police power of the city, with its concurrent general taxing power, to meet the cost of this policing. We conclude with another quotation from the cited case: "As already said, the power of taxation is a power incident to such a corporation, and may be exercised for all the purposes authorized by its charter or subsequent legislation. Whatever the Legislature empowers the corporation to do is presumably for its benefit, and may, in 'the proper government of the same,' be done. Having the power to levy a tax for the payment of the judgments of the relator, it was the duty of the City, through its authorities, to exercise the power. The payment was not a matter resting in its pleasure, but a duty which it owed to the creditor. Having neglected this duty, the case was one in which a mandamus should have been issued to enforce its performance. Board of Com'rs Knox Co. v. Aspinwall, 24 How. 376, 16 L.Ed. 735; Von Hoffman v. Quincy, 4 Wall. 535, 18 L.Ed. 403; Benbow v. Iowa City, 7 Wall. 313, 19 L.Ed. 79; Lee County Supervisors v. Rogers, 7 Wall. 175, 19 L.Ed. 162; The Board of Supervisors of Washington County v. Durant, 9 Wall. 415, 19 L.Ed. 732; Cass Co. v. Johnston, 95 U.S. 360, 24 L.Ed. 416."

The delegation of power in the instant case is restricted and specific; the mode and manner of action by the drainage commissioners are left to the majority discretion of the board. The judicial is without power to place itself in the stead of the drainage commissioners in the exercise of their discretionary powers.

The case of State ex rel. Ascension Red Cypress Co. v. New River Drainage Dist., 148 La. 603, 87 So. 310, we consider, is not in support of any of the points advanced by its proponents. To the contrary, we think it strongly supports our instant ruling.

We shall omit any reference to the facts because they are sufficiently indicated by the following digest of the decision, copying from the several headnotes of the case:

"1. Want of funds is a complete answer to petition for mandamus to compel governing authorities of a political corporation to pay a judgment against the corporation unless the corporation has authority to collect revenues with which to pay the judgment.

"2. Mandamus decree against board of commissioners of drainage district to compel payment of judgment, which commands the taking of such steps as are incidental and necessary to enable board to pay judgment, is unenforceable, because it leaves it optional with members of board to do whatever they deem necessary.

"3. A board of commissioners of drainage district cannot be legally commanded to levy a tax to pay a judgment unless the authority has been conferred by legislative enactment.

"4. The right of a political corporation or subdivision of state to levy taxes must be conferred in terms, and is not to be implied from the mere fact that the Legislature has created the political corporation."

We now come to the case of Ozenne v. Board of Commissioners of St. Landry and St. Martin Gravity Drainage District No. 1 of Parishes of St. Landry and St. Martin, 183 La. 465, 164 So. 247. There is nothing offensive in this cited case to that which the Court is concluding in the instant case. In this Ozenne case, the Board of Commissioners in their discretion favored the refund of, and used the provisions of law to refund, their drainage district bond issue, then in arrears. It is noted that the original period of years for the collection of the tax had not run; that the holders of unpaid bonds were willing to exchange them for the proposed refunding bonds and even to take in the exchange a less sum and that at a lower rate of interest.

In the instant case there is the want of the willingness of the Board of Commissioners of the drainage district to refund. The judiciary is without power to control this discretion.

The case of Rawle v. Jefferson and Plaquemines Drainage Dist., 187 La. 891, 175 So. 610, is, for all practical purposes, an affirmance of the Ozenne case, supra. Many of the points urged disappeared from consideration because of the application of the rule of prescription that no more than thirty (30) days may elapse from the date

138

of publication of the resolution providing for the issuance of the refunding bonds and the attack on the validity of the bonds.

So, for any and all of the above reasons, we are constrained to dismiss the complaints of plaintiff and intervenor.

This is not a case where, granting that there be a strong equity in favor of the complainant, the answer could be made that there is no recourse. We do say that members of Boards of Drainage Commissioners are replaced after some members die or others resign or through the unlimited power of the Governor to replace arbitrarily old members with new. The recourse of the plaintiff and intervenor is to seek the favorable exercise of the discretion of the Board of Commissioners of Avoyelles Drainage District No. 8—if such be not precluded by this opinion, if upheld, or by the limitation of time.[1]

Judgment in keeping with the above opinion will be signed upon presentation.

See also D.C., 78 F.Supp. 513.

1. This case was filed during the year 1939. Why should it be so late in reaching decision on its merits? The delay is accountable as follows:

(a) There was issue on motion to dismiss, filed by the defendant. This was decided by our judgment of May 9, 1941.

(b) There was prevalent over the state the question of the issuance of a state-wide drainage bond issue. It was assumed, in order to give good credit to this issue and bring about a satisfactory bidding, that all the numerous defaulted drainage bond issues of the state would be assumed by the new state-wide bond issue. The plaintiff and intervenor requested the court to delay trial of this case for that reason.

(c) There was also the public question later that the Parish of Avoyelles would issue a parish-wide drainage bond issue and for the same reason just given, the several defaulting drainage districts in Avoyelles Parish would have the bonds assumed and paid out of the proceeds of the sale of this new issue. This delayed—and very correctly—the trial of the case. See Art. 14, Sec. 14(k), La.Const. of 1921.

· (d) One of the bondholders intervened in the instant case and opposed the execution of our judgment whereby, after

hearing, we had ordered the prorated payment of $215.07 on each one of the outstanding bonds of this defaulting drainage district. This took some more

time for decision. See, Ernest M. Loeb Co. v. Avoyelles Drainage District No. 8 of Parish of Avoyelles, La., et al., D. C., 60 F.Supp. 296.